# Illinois Official Reports

## Supreme Court

---

### *People v. Chambers*, 2016 IL 117911

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TERRILL CHAMBERS, Appellee. |
| Docket No. | 117911 |
| Filed | January 22, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and William Toffenetti, Assistant State's Attorneys, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Tomas G. Gonzalez, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    A search warrant was served at a home belonging to defendant Terrill Chambers' mother. He was found inside, along with a large quantity of cocaine, cash, weapons, and ammunition. The circuit court of Cook County denied his repeated requests for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). After a jury trial, he was convicted of armed violence and unlawful possession of a controlled substance with intent to deliver and sentenced to consecutive terms of 25 and 45 years' imprisonment. On appeal, he argued that the trial court erred by denying his request for a *Franks* hearing. The appellate court held that the trial court should have conducted a *Franks* hearing and remanded to allow the trial court to conduct the hearing and to determine whether the search warrant was properly issued. 2014 IL App (1st) 120147. This court allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2013). For the reasons that follow, we affirm.

¶ 2                                        BACKGROUND
¶ 3    On April 19, 2007, Markham police officer Tony DeBois filed a complaint for a search warrant for the house at 15227 Parkside in Markham, Illinois, and for any safe or lockbox within the residence. In support of the warrant application, DeBois and a confidential informant identified as "John Doe" signed the complaint and swore to the truth of its contents in the presence of the judge.

¶ 4    In the complaint, DeBois stated that he had been a police officer for 11 years and that he was assigned to a tactical gang and narcotics unit. In that role, he had been investigating suspected narcotics sales from the 15227 Parkside address for three months based on numerous calls about marijuana being sold there by defendant.

¶ 5    The complaint further stated that at about 4:30 p.m. the previous day, near 15110 Cherry Street, Doe and two other men were detained by police and then transported to the Markham police department. At the time of his arrest, Doe was in possession of six plastic bags of marijuana that he stated he had purchased earlier that afternoon from defendant at the Parkside address for $60.

¶ 6    The complaint also stated that Doe was known to the officer because he had previously assisted him in other narcotics and weapons cases. According to the complaint, Doe told the officer that he knew defendant and had been inside the Parkside residence on several occasions and that he had seen cannabis and firearms there. Further, DeBois stated that the informant identified defendant's mug shot and signed the photograph on the back.[1]

---

[1]No signed mug shot is in the record.

¶ 7        Later that morning, officers from the Illinois State Police, the Cook County sheriff's department, and the Markham police department, including Officer DeBois, served the search warrant. Inside the home, they found defendant, along with a quantity of cannabis, two large bags of cocaine weighing 1718.4 grams in total, and approximately $52,000 in cash. In addition, the officers discovered jewelry valued at almost $69,000, several types of ammunition, and firearms including: a loaded AK-47 assault rifle, a Taurus .40-caliber handgun, a Glock .40-caliber pistol with an extended 29-round magazine, a Marlin lever-action .22-caliber rifle, a .410-gauge shotgun, a 12-gauge semiautomatic shotgun, a .45-caliber semiautomatic rifle, and a .38-caliber snub-nosed revolver.

¶ 8        Defendant, who was alone in the house at the time of the search, was arrested and was later charged by indictment with 36 counts of armed violence, nine counts of unlawful use of a weapon by a felon, two counts of unlawful use of a weapon based on his possession of a "machine gun," one count of possession of a controlled substance with intent to deliver (over 900 grams of cocaine), one count of possession of a controlled substance, one count of possession of cannabis with intent to deliver, and one count of possession of cannabis.

¶ 9        Defendant filed a motion for a *Franks* hearing alleging that the officer either knew that the allegations in the complaint were false or that he made the statements with reckless disregard for the truth. Specifically, defendant claimed that the officer's statements that the informant had been known to him for over one year and that the informant had assisted in other cases were false because the officer had been employed by the Markham police department for only three days when he applied for the warrant. Similarly, the officer's statement that he had been conducting narcotics-related investigations regarding the 15227 Parkside address for "the past 3 months" was also false because the officer was not employed in Markham during that time. In addition, defendant asserted that he had been at another location at the time Doe claimed to have purchased marijuana from him at 15227 Parkside. Defendant submitted affidavits from his mother, stepfather, girlfriend, and a family friend. In sum, the affidavits averred that defendant was at the residence he shared with his mother and stepfather at 3031 Sherwood Avenue in Markham, doing plumbing work with his stepfather, at the time of the alleged sale of marijuana at the house on Parkside. His mother stated that she had recently inherited the home on Parkside and that it was undergoing rehabilitation by a contractor.

¶ 10        Defendant also asked the trial court to take judicial notice that there is no Cherry Street in Markham, so the officer could not have stopped Doe's car there. He provided exhibits showing that there is a Cherry Lane in Markham, but it ends south of 152nd Street; thus, the 15100 block of Cherry Lane does not exist. The land immediately north of 152nd Street is a heavily wooded park, with no automobile access.

¶ 11        The State's response did not address the specific allegations of falsehoods in the complaint. Rather, the State argued that because the informant appeared with the officer at the warrant hearing, this case "clearly falls outside the scope of *Franks*," so the court "need not address whether the defendant made a substantial preliminary showing that statements in the complaint were either deliberately false or made with reckless disregard of the truth."

¶ 12        The court granted defendant's motion for a *Franks* hearing. The court noted that although all but one of the affidavits offered by defendant were by members of his family, one affidavit was from an unrelated family friend who worked as a dispatcher for a law enforcement agency. In addition, the stop could not have occurred at the address listed in the complaint; that address

would have placed the stop "in the middle of a forest preserve." This led to the court's conclusion that the warrant affidavit "contains deliberately included falsehoods or there was a reckless disregard for the truth."

¶ 13 The case was transferred to another judge who set a date in July 2010 for the *Franks* hearing. On the scheduled hearing date, the State filed a motion to reconsider, arguing that defendant had not made the requisite preliminary showing to entitle him to a *Franks* hearing for two reasons. First, the incorrect Cherry Street address in the warrant application was due to two typographical errors, one in the name of the street and the other in the number of the address. The arrest report showed that the traffic stop occurred at 15410 Cherry Lane, which, the State asserted, is a real Markham address. Further, the individual who provided the only affidavit from a nonfamily member claimed that she saw defendant at the Sherwood Avenue house between 11 a.m. and 2:30 p.m. on the day that Doe claimed to have purchased marijuana from him at about 4:30 p.m. Only his stepfather's and girlfriend's affidavits claimed to have seen him there in the late afternoon.

¶ 14 Defendant responded that the motion to reconsider, filed a year and a half after the motion for a *Franks* hearing was granted, was untimely. On the merits, defendant argued that he had made the requisite substantial preliminary showing.

¶ 15 In granting the motion to reconsider, the court noted that it was following the rule established in *People v. Gorosteata*, 374 Ill. App. 3d 203 (2007) (*Franks* hearing is not required when the confidential informant appeared in court at the warrant proceeding).

¶ 16 Defendant filed a second motion seeking a *Franks* hearing, in which he reiterated his original arguments and also asserted that the signatures of "John Doe" on the warrant complaint and on the mug shot did not match and that the police did not keep a file on the confidential informant.

¶ 17 The second *Franks* motion was also accompanied by the video-recorded statement of Aaron Lindsey, who was a 17-year-old high school senior at the time of his arrest on April 18, 2007. Lindsey stated that after he left school that afternoon, driving his mother's car, he picked up two friends, Miles Copeland and Jeron Cotton. Copeland was behind the wheel, and they were smoking marijuana in the car before they were stopped on Cherry Lane by two plainclothes officers in an unmarked police car. The officers found six plastic bags of marijuana and a handgun in the car, and the three men were arrested and taken to the Markham police department. After several hours in lockup, Lindsey was questioned by one of the arresting officers and another officer. He explained that the gun belonged to his stepfather and that he had purchased the marijuana at school. He did not tell the officers that he bought the marijuana from defendant, he did not identify or sign a mug shot of defendant, he did not sign an affidavit for a search warrant, and he did not appear before the judge who issued the search warrant. He did not meet or speak to Officer DeBois during this entire process.

¶ 18 Lindsey, who is defendant's cousin, stated that defendant told him that he had learned through discovery that the alleged informant was stopped on Cherry Lane on April 18, 2007, and that he had both marijuana and a gun in the car. Because these circumstances matched the circumstances of Lindsey's arrest, he and defendant began to suspect that Lindsey was the alleged confidential informant who was purported to have provided the basis for the search warrant. They concluded that the police must have identified him, without his knowledge or cooperation, as the source of the information used to obtain the warrant.

¶ 19    Lindsey's account is corroborated at least in part by a Markham police department Offense/Incident Report dated April 18, 2007, at 16:45 hours. The reporting officer, a D. Walker, stated that he observed a vehicle improperly parked in the roadway on Cherry Lane. The driver was not wearing a seatbelt. The vehicle sped away and then stopped in front of 15410 Cherry Lane. Three occupants exited the vehicle and attempted to walk away, despite the officers' instructions to remain in the vehicle. When they were stopped, green plant material was observed on the shirts of all three subjects and an "extremely strong odor of cannabis" was coming from inside the car. More green plant material was observed in plain view on the front seats and floorboards of the car. A search revealed a plastic bag containing six plastic bags of marijuana. The three occupants of the vehicle were arrested.[2]

¶ 20    In addition, defendant's second *Franks* motion alleged that Officer DeBois's statement in the warrant complaint that he was a Markham police officer with 11 years' experience was false because he failed to disclose that he had previously been dismissed from the Harvey police department and was not employed as a police officer for a significant period of time prior to joining the Markham police department only days before defendant's arrest.

¶ 21    The State denied that Aaron Lindsey was the confidential informant upon whose information the warrant application was based and urged the court to reject any reliance on Lindsey's statement because he was defendant's cousin and defendant had transported Lindsey to his lawyer's office to give the recorded statement.

¶ 22    The court denied defendant's motion, finding Lindsey's statement not credible and again relying on *Gorosteata*, stating that the "affidavit is sufficient on its face for probable cause."

¶ 23    After this court denied defendant's motion for a supervisory order, he filed a third motion for a *Franks* hearing, this time attaching an affidavit from Miles Copeland, who stated that he had been behind the wheel of Lindsey's car at the time of the stop on Cherry Lane. As he and the two other men were being escorted in to the police station, Lindsey told him that he would take the "wrap" [*sic*] for the "weed" and for the gun, which was registered to Lindsey's stepfather.

¶ 24    Copeland stated that he had been the John Doe witness and that he had signed a false affidavit because Officer DeBois threatened him with five years in prison if he did not do so. He claimed that he and Lindsey had acquired the six bags of marijuana in an armed robbery, not from the defendant. He stated that he did not know the defendant and had not visited him at the Parkside address. Copeland further stated that he was never an informant for the police before this arrest and that Officer DeBois knew that the statements in the affidavit presented to the issuing judge were false and perjurious.

¶ 25    Copeland asserted in his affidavit that Officer DeBois took him to the Markham courthouse for the warrant hearing and on the way there "kept schooling" him as to what he was expected to say and do. When he was brought before the judge, he raised his right hand and was sworn in. The judge told him that if he was lying, he faced three to five years in prison for perjury. He signed the forms that were placed in front of him and was taken back to the police station.

¶ 26    At the hearing on this motion, the State pointed out that the Copeland affidavit contradicted the Lindsey sworn statement. In addition, the State argued that under *Gorosteata* no *Franks*

---

[2]The record contains only one page of the report, although it indicates that it continues onto another page.

hearing will be granted when the informant appeared before the judge at the warrant proceeding. The court denied the defendant's third *Franks* motion, again relying on *Gorosteata*.

¶ 27    The State nol prossed all but eight counts of armed violence and one count of possession of a controlled substance with intent to deliver. At trial, defendant presented no evidence. The jury found him guilty of four counts of armed violence, deadlocked on one count, and acquitted him on three counts. The jury also found him guilty of the narcotics charge. The court sentenced defendant to 25 years in prison for the armed violence convictions and 45 years for the narcotics conviction, the sentences to run consecutively.

¶ 28    On appeal, he argued that the trial court erred by denying him a *Franks* hearing and that his sentence was excessive. Applying an abuse of discretion standard, the appellate court rejected the premise that a *Franks* hearing is never warranted if the informant who provides information necessary to the issuance of the warrant appears before the magistrate. 2014 IL App (1st) 120147, ¶ 16. Rather, the appellate court concluded, the informant's appearance and testimony before an issuing judge is "but one factor to consider in determining whether to grant a *Franks* hearing, but it does not categorically preclude the court from holding a *Franks* hearing." *Id.* ¶ 15. Thus, the court held, if a defendant "has evidence that the affiant-officer acted intentionally or with reckless disregard for the truth by presenting a warrant affidavit with false allegations, he should be given the opportunity to present that evidence before the trial court." *Id.* ¶ 17.

¶ 29    Applying these principles to the facts of the present case, the appellate court found that the affidavits submitted by the defendant "raise a question of defendant's presence at the relevant address at the time of the incident and are sufficiently detailed to subject the affiants to the penalties of perjury if their allegations are untrue." *Id.* ¶ 21. In addition to the alibi affidavits, defendant "also submitted an affidavit from the purported confidential informant, Copeland, who explicitly averred that he made false allegations against defendant because he was threatened by Officer DeBois." *Id.* Copeland's affidavit, if believed, meets the standard of a sufficient showing that the officer "had knowledge that the allegations in the complaint for a search warrant were false." *Id.* Thus, the court concluded, the defendant should be afforded the opportunity to present this evidence at a *Franks* hearing. *Id.* The appellate court held that the trial court abused its discretion by failing to hold an evidentiary hearing to determine the credibility of the affiants and to resolve the inconsistencies between the Lindsey and Copeland affidavits. *Id.* ¶ 22.

¶ 30                                                ANALYSIS

¶ 31    As appellant before this court, the State argues that the appellate court's decision should be reversed for two reasons. First, the State argues for the adoption of a bright-line rule that the appearance of the nongovernmental confidential informant before the judge prior to the issuance of a search warrant completely removes this case from the ambit of *Franks*. Second, the State argues that even if the appearance of the informant before the issuing judge does not necessarily preclude a *Franks* hearing, the appellate court in the present case failed to give proper deference to the trial court's decision to deny a *Franks* hearing.

¶ 32    Defendant argues that the proper standard of review of the denial of a *Franks* hearing is *de novo*. Further, he argues that, as a matter of law, his request for a *Franks* hearing comes well

within the ambit of the rule enunciated by the Supreme Court in *Franks*. Finally, he argues that the appellate court properly found that he has made a sufficient showing to warrant a *Franks* hearing.

¶ 33                    The Ambit of the Rule of *Franks v. Delaware*

¶ 34    In *Franks*, the issue presented was whether "a defendant in a criminal proceeding ever [has] the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant." *Franks*, 438 U.S. at 155.

¶ 35    The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. This rule, the Court stated, maintains the traditional "presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. Thus, the "challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.*

¶ 36    The Court emphasized that the rule it announced in *Franks* "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id.* at 167. Further, the "deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.* at 171.

¶ 37    This court considered the issue in a case involving a warrant application based on an informant's tip in *People v. Lucente*, 116 Ill. 2d 133 (1987). The defendant, who was charged with possession of a controlled substance with intent to deliver, filed a motion for a *Franks* hearing, seeking to quash the warrant and arrest and to suppress the seized evidence. *Id.* at 140. In support of his motion, he alleged that the officer's affidavit in support of the warrant application contained intentional misrepresentations, specifically that a confidential informant had told the officer that he purchased marijuana from the defendant at his apartment at 8:30 p.m. the previous evening. *Id.* at 139-40. The officer's affidavit also stated that the informant had provided information in eight previous cases, each leading to an arrest and five resulting in convictions. *Id.* at 140. The defendant's motion was supported by affidavits from himself, his sister, and his wife stating that they were together at the sister's home at the time of the alleged sale to the informant. *Id.* The circuit court granted the motion, held a *Franks* hearing, quashed the warrant, and suppressed the evidence seized. *Id.* at 139. The appellate court affirmed, as did this court. *Id.* at 155.

¶ 38    The first issue this court addressed was the State's contention that the defendant should not have been granted a *Franks* hearing because he failed to make the requisite substantial preliminary showing, which we called the "linchpin" of the *Franks* procedure. *Id.* at 147. After noting the presumption of validity regarding the affidavit supporting a search warrant, we noted that this case differed from *Franks* in one crucial respect: "the warrant affidavit [in the present case] was based entirely on information furnished by a confidential informant."

(Emphasis omitted.) *Id.* at 147-48. We observed that "the defendant's preliminary showing is in the nature of an alibi, tending to establish that someone—either the informant or the officer—fabricated the transaction described in the warrant affidavit." *Id.* at 148.

¶ 39    The State's position was that the defendant's showing was insufficient because it did not negate the possibility that it was the informant, rather than the officer, who was the source of the false statement. *Id.* This court noted that if this were the requirement, an alibi, no matter how strong, would never be sufficient to justify a *Franks* hearing because the source of a falsehood in the warrant complaint could not be determined without a *Franks* hearing. *Id.*

¶ 40    Rejecting such a framework, this court declined to apply *Franks* "so inflexibly as to make hearings unattainable." *Id.* at 149. In keeping with the purpose of *Franks*, "to provide meaningful, albeit limited, deterrence of and protection against perjurious warrant applications," this court held that "*Franks* does not require defendants faced with anonymous-informant-based warrants to do the impossible. As a preliminary matter, the defendant cannot be required to establish what an anonymous, perhaps nonexistent, informant did or did not say." *Id.* at 150.

¶ 41    What is required is that the defendant's preliminary showing be more than a mere request and more than an unsubstantiated denial. *Id.* at 151. However, because the defendant's burden at the *Franks* hearing itself is preponderance of the evidence, the preliminary showing may, logically, be something less. *Id.* at 151-52. This court did not precisely define this threshold, except to say that it "lies somewhere between mere denials on the one hand and proof by a preponderance on the other." *Id.* at 152.

¶ 42    *Lucente* differs from the present case in one vital respect. While *Lucente* involved allegedly false statements attributed by the officer to a confidential informant, the informant did not appear at the hearing on the warrant application. The appellate court, however, has considered several cases in which the informant did appear.

¶ 43    The State urges us to adopt the bright-line rule set out by the appellate court in *People v. Gorosteata*, 374 Ill. App. 3d 203 (2007). In that case, a police officer's complaint for issuance of a search warrant stated that the officer had spoken to a "concerned citizen," who had told him that he had purchased marijuana from the defendant at a specific address on a specific date. *Id.* at 205-06. The concerned citizen, identified as John Doe, accompanied the officer when he presented his complaint to the circuit court. *Id.* at 206.

¶ 44    Prior to trial, the defendant filed a motion for a *Franks* hearing; the motion was accompanied by affidavits from the defendant and several family members. The gist of the affidavits was that the family was gathered at the address on that date to celebrate a child's birthday and that no one else came to the apartment on that date to be shown, smoke, or purchase marijuana. Thus, the defendant averred, the officer relied on the informant's account in reckless disregard of the truth. *Id.*

¶ 45    The appellate court acknowledged the purpose of allowing *Franks* hearings is to deter police misconduct, but noted that *Franks* itself was concerned with deliberate falsity or reckless disregard of the truth by the affiant police officer, " 'not of any nongovernmental informant.' " *Id.* at 212 (quoting *Franks*, 438 U.S. at 171). The court also quoted *United States v. Owens* for the proposition that " '[i]t is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false

- 8 -

statements in the affidavit.' " *Id.* (quoting *United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989)).

¶ 46    The court rejected the defendant's claim of error on two separate bases. First, the affidavits were "suspect to begin with, since they all derive[d] from family members," and they did not preclude the possibility of the narcotics transaction that John Doe recounted to the officer because they did not assert that the defendant was constantly in the company of family members on the date in question. *Id.* at 212-13. This alone would have been a sufficient basis for affirming the trial court's denial of defendant's motion for a *Franks* hearing. *Id.* at 213.

¶ 47    The court nevertheless considered the fact that "John Doe personally testified before the magistrate at the time [the officer] applied for the search warrant." *Id.* This fact, the court concluded, "removed this case from the ambit of *Franks*." *Id.* The court reasoned that "when a nongovernmental informant is personally brought before the magistrate to testify to the facts that will establish probable cause in a warrant, the burden of determining the reliability of the informant then shifts to the court and away from law enforcement personnel." *Id.*

¶ 48    Thus, even if the officer avoided making any representations about the reliability of the informant because he was "an unknown quantity to police," any failure to elicit information from the informant that would have tested his credibility " 'lies with the issuing magistrate and not with the law enforcement officers.' " (Emphasis omitted.) *Id.* at 214 (quoting *State v. Jensen*, 915 P.2d 109, 116 (Kan. 1996)). As a result, *Franks* " 'does not apply in such instances because there exists no governmental misconduct that could be detected or deterred by a *Franks* hearing.' " *Id.* (quoting *State v. Moore*, 773 P.2d 96, 98 (Wash. Ct. App. 1989) (*Franks* hearing is not required even if the testimony of nongovernmental affiant is later shown to have been intentionally false or gathered in a manner that would have been unconstitutional if done by a governmental agent)).

¶ 49    Finally, the appellate court noted one of its own earlier decisions in which it held that when an informant appears before the magistrate, "it is not even necessary for the police to corroborate the informant's account since 'the judge issuing the search warrant ha[s] an opportunity to *** determine the basis of [the informant's] knowledge.' " *Id.* (quoting *People v. Phillips*, 265 Ill. App. 3d 438, 448 (1994)).

¶ 50    Another division of the same district of the appellate court reached a different result in *People v. Caro*, 381 Ill. App. 3d 1056 (2008). The defendant was charged with unlawful use of a weapon after a search of his apartment revealed a shotgun with a barrel measuring less than 18 inches. *Id.* at 1058. The search had been conducted pursuant to a warrant obtained based on information provided by a John Doe informant, who claimed to have purchased cocaine from the defendant at his apartment on a particular date. The officer who submitted the complaint and affidavit for the search warrant brought John Doe before the judge, who interviewed him, under oath, for approximately ten minutes regarding the facts alleged in the warrant application. *Id.* at 1057-58.

¶ 51    The trial court granted the defendant's motion for a *Franks* hearing, which was supported by the defendant's own affidavit and affidavits from his two roommates, one of whom, David, was also his brother. *Id.* at 1058-59. As in *Gorosteata*, these affidavits offered an alibi for the date of the purported drug sale. The defendant stated that the night before the alleged drug sale, he had gone to bed at about 10 p.m. He woke at 6:30 a.m. and left for work at 7 a.m. At approximately 7:30 p.m., he returned from work. His roommates were home when he arrived;

he ate dinner, watched television, and went to bed. No one came to the apartment that evening. *Id.* at 1058.

His brother's affidavit stated that he, too, had gone to bed early. He got up at 3:30 a.m. and left for his job as a machine operator at 4 a.m. He worked until 1:30 p.m. and returned home to an empty apartment at 2 p.m. The third roommate came home at 4 p.m., and the two men cooked dinner and watched television until he went to bed about 7:30 p.m. He heard defendant enter the apartment at about 8 p.m. He did not see anyone else in the apartment on that date. *Id.* at 1059.

The third roommate stated in his affidavit that he woke up at 6:15 a.m. on the date of the alleged drug sale and left for work at 6:45. He returned home about 4 p.m. and made dinner and watched television with David. The defendant returned to the apartment as he was getting ready to go to bed. No one, other than he and his two roommates, was in the apartment on that date. *Id.*

Based on these three affidavits, the trial court granted the motion for a *Franks* hearing. After the hearing, the trial court granted the defendant's motion to quash the search warrant and suppress evidence. *Id.* at 1061. On appeal, the State, relying on *Gorosteata*, argued that the trial court erred as a matter of law by granting a *Franks* hearing when the informant had personally testified at the hearing on the warrant application.

The appellate court rejected the State's argument that this case fell outside the scope of *Franks*, holding that the informant's testimony at the warrant hearing does not categorically preclude a *Franks* hearing. *Id.* at 1065. Rather, the court concluded, such a rule would defeat the purpose of *Franks* "by allowing a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, to stand beyond impeachment as long as the nongovernmental informant testified before the judge issuing the search warrant." *Id.* at 1066. Further, "*Franks* simply contains no language precluding an attack on the warrant affidavit when a nongovernmental informant testifies before the issuing judge." *Id.* The appellate court not only rejected the State's position that the case fell outside the scope of *Franks*, it also ruled on the merits that the trial court did not err by granting a *Franks* hearing. *Id.* at 1063.

The defendant urges this court to reject the rigid approach of *Gorosteata* and to adopt the more flexible approach of *Caro*, which would look at the substance of the *Franks* motion and supporting documents to determine whether the defendant has made the required substantial preliminary showing.

The State argues that this approach would undermine the purpose of *Franks*, which is to deter police misconduct in the obtaining of search warrants. According to the State, when a warrant is procured based on a false statement made by an informant, the officer satisfies his obligation by bringing the informant to court and subjecting him to questioning under oath by the issuing judge. The judge, not the officer, should question the basis of the informant's knowledge and determine his credibility. The State further insists, without explanation, that the *Caro* rule will actually discourage officers from bringing informants to a judge for questioning.

In the present case, the informant appeared with Officer DeBois at the warrant proceeding, was sworn in, and signed the affidavit as "John Doe" in the presence of the court. There is some disagreement about what else occurred during the hearing. The informant, now tentatively identified as Copeland, states in his affidavit that he was not questioned by the

judge and did not actually testify. Indeed, he claims that he was specifically instructed by the officer not to speak. In its reply brief, the State asserts that it "strains credulity to believe that any judge would place a confidential informant under oath and then issue a search warrant based on that informant's information without asking him any questions." At oral argument, the State's position was that the judge "almost certainly asked the affiant" about the underlying facts and, therefore, had the opportunity to test the veracity of his allegations.

¶ 59 Under the reasoning of *Gorosteata*, however, it would not matter whether the informant actually testified or even that he remained silent because he was directed to do so by an officer who intentionally falsified the information in the warrant affidavit. Once the officer presented the informant to the court, the burden of finding the truth would have been entirely on the court. *Gorosteata*, 379 Ill. App. 3d at 213.

¶ 60 We decline to adopt such a rule, which would shield police misconduct such as conspiring with an informant or coercing an informant into making false statements in an affidavit or in testimony to the court. Such a rule would undermine the purpose of *Franks*.

¶ 61 In *Franks*, the Court noted that the warrant requirement of the fourth amendment is predicated on the assumption that there will be a "truthful showing" to the issuing court, from which it can determine whether probable cause exists. "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. "Because it is the magistrate who must determine independently whether there is probable cause, [citations], it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Id.*

¶ 62 The Court acknowledged the reality that the warrant "hearing before the magistrate not always will suffice to discourage lawless or reckless misconduct. The pre-search proceeding is necessarily *ex parte* ***. The usual reliance of our legal system on adversary proceedings itself should be an indication that an *ex parte* inquiry is likely to be less vigorous. The magistrate has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations. The pre-search proceeding will frequently be marked by haste, *** [and the] urgency will not always permit the magistrate to make an extended independent examination of the affiant or other witnesses." *Id.* at 169.

¶ 63 We, therefore, reject the bright-line rule of *Gorosteata* and hold that the presence of the informant at the *ex parte* hearing on the warrant application does not, standing alone, foreclose the possibility of a *Franks* hearing. When the defendant claims intentional, knowing, or reckless conduct by the affiant officer resulting in the presentation of false information to the issuing judge, the presence of the informant who allegedly provided that information is merely a factor to be considered when deciding whether a substantial preliminary showing has been made. Thus, *Gorosteata*, 374 Ill. App. 3d 203, and all cases applying the rule enunciated therein are hereby overruled.

¶ 65    Before considering whether the defendant made such a showing, we must address the parties' dispute over the standard of review to be applied to a trial court's ruling on a defendant's motion for a *Franks* hearing. This court has not had occasion to specifically identify the standard of review, although the appellate court has stated that the abuse of discretion standard is appropriate. *Caro*, 381 Ill. App. 3d at 1062; *Gorosteata*, 374 Ill. App. 3d at 212. The State argues that this court should expressly hold that the abuse of discretion standard applies.

¶ 66    The defendant responds that the first stage of the *Franks* process, in which the court determines whether a full *Franks* hearing is warranted, is a "pleadings-based inquiry" and that because the trial court is in no better position than a reviewing court to evaluate the sufficiency of the allegations, no deference to the trial court is required. He compares this inquiry to the first stage of postconviction proceedings, in which the trial court determines whether the allegations raised in the postconviction petition are frivolous and patently without merit, a legal determination not afforded any deference on review. See *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The defendant also argues that some federal circuits apply *de novo* review to a district court's denial of a request for a *Franks* hearing. See, *e.g.*, *United States v. Ritter*, 752 F.2d 435, 439 (9th Cir. 1985) ("The decision to hold a *Franks* hearing is a determination about the legal sufficiency of a set of allegations ***. This decision should be reviewed *de novo*."); *United States v. Mueller*, 902 F.2d 336, 341 (5th Cir. 1990) ("The denial of a *Franks* hearing is reviewed *de novo*.").

¶ 67    The State disputes this assertion, stating that none of these courts apply a "true *de novo* standard of review" that gives no deference at all to the trial court. The State is correct only in the sense that these courts distinguish between review of the any factual findings for clear error and *de novo* review of the court's ultimate ruling on the sufficiency of the *Franks* motion. See, *e.g.*, *People v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011) ("We assess de novo the legal determinations underlying a district court's suppression rulings, including the denial of a *Franks* hearing, and we review the court's factual findings relating to such rulings for clear error."); *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001) ("We review the district court's denial of a *Franks* hearing under the same standard as for the denial of a motion to suppress: the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo."). However, the State goes further, arguing that the clear error standard of review is "very similar" to the highly deferential abuse of discretion standard.

¶ 68    We reject the notion that clear error review is indistinguishable from review for abuse of discretion. As we have noted, review for clear error review applies to findings of historical fact and gives due weight to any inferences drawn from those facts by the fact finder, warranting reversal only when those findings are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). This stands in sharp contrast to the requirement that an abuse of discretion will be found only when the trial court's decision was "arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

¶ 69    In the present case, the appellate court reviewed the trial court's ruling for abuse of discretion, relying on certain language in our opinion in *Lucente*, where we said that given the presumption of validity with respect to an affidavit supporting a search warrant, "[s]o long as

the trial court's judgment is exercised within permissible limits, that judgment will not be disturbed." *Lucente*, 116 Ill. 2d at 153. The State characterizes this comment in *Lucente* as implicitly settling the question of the proper standard of review and invokes the doctrine of *stare decisis* to state that this question is settled law under this court's precedents. The State also suggests that this court's mention of the "unavoidably subjective nature" of "these determinations" (*id.*), was an indication of our approval of a deferential standard of review.

¶ 70    *Lucente* came to this court in a different procedural posture: the trial court had granted the defendant's motion for a *Franks* hearing and after that hearing quashed the warrant and suppressed the evidence. *Id.* at 139. This court affirmed, finding that the decision to quash the warrant and suppress evidence was not against the manifest weight of the evidence. *Id.* at 155. Prior to reaching this issue, however, this court addressed the State's threshold argument that the trial court erred by allowing the *Franks* hearing because the defendant had not made the "substantial preliminary showing" required by *Franks*.

¶ 71    While this court did not invoke a particular standard of review, it did discuss the nature of the inquiry. First, the trial court must give effect to the presumption of validity of the search warrant. *Id.* at 147. Second, the motion must allege deliberate falsehood or reckless disregard for the truth, and these allegations must be accompanied by an offer of proof. *Id.* "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." (Internal quotation marks omitted.) *Id.* at 148. This type of assessment of the adequacy of the motion does not require an exercise of discretion.

¶ 72    This court also noted the purpose of the substantial preliminary showing requirement: "to discourage abuse of the hearing process and to enable spurious claims to 'wash out at an early stage.' " *Id.* at 151 (quoting *Franks*, 438 U.S. at 170). This threshold standard of a "substantial" showing requires something more than mere denial but something less than a preponderance of the evidence. *Id.* at 152. Again, determining whether a motion and the accompanying offer of proof reach this level is not a discretionary determination.

¶ 73    We did say in *Lucente* that the decision as to whether there has been a substantial preliminary showing "must be made by the trial judge, and to a degree the decision on the issue will be final" (*id.* at 152 (citing *McCray v. Illinois*, 386 U.S. 300, 308-13 (1967))), and this statement could be read to suggest a degree of deference to the trial court's ruling on a motion for a *Franks* hearing. *McCray*, however, was decided in 1967—11 years before *Franks*—so it could not have been speaking to the issue of whether a defendant seeking a *Franks* hearing has made a substantial preliminary showing.

¶ 74    Our prior decisions have neither implicitly nor explicitly stated the standard of review of a trial court's determination of whether a defendant has made a substantial preliminary showing in his motion for a *Franks* hearing and accompanying documents. To resolve this open question, we must examine the nature of the *Franks* inquiry to determine whether a ruling on the motion is a matter of judicial discretion, a factual determination, or an application of the law.

¶ 75    Review for abuse of discretion is proper when the trial court is called upon to exercise its equitable powers (*Seymour v. Collins*, 2015 IL 118432, ¶ 41), or when it must, for lack of a better phrase, make a judgment call. As we have recently observed, "we review a trial court's exercise of discretion for abuse of discretion." *Id.* ¶ 48. Thus, because the admissibility of evidence rests within the discretion of the trial court, its decision will not be disturbed absent

an abuse of that discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). Similarly, the extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court. Only in the case of a clear abuse of discretion, resulting in manifest prejudice to the defendant, will a reviewing court interfere. *People v. Stevens*, 2014 IL 116300, ¶ 16. In these contexts, the trial court's familiarity with the facts and circumstances of the case and the progress of the litigation give it particular insight into the admissibility of evidence or the scope of permissible cross-examination. A motion for a *Franks* hearing does not require the trial court to draw upon any particular familiarity with the case. Instead, the motion asks the trial court to assess the sufficiency of the allegations in the motion, giving effect to a presumption of validity that attaches to a warrant affidavit. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). We conclude that the court's ruling on a motion for a *Franks* hearing is not a matter of judicial discretion comparable to the admissibility of evidence or the scope of cross-examination.

¶ 76    We also reject the manifest weight of the evidence standard and the clearly erroneous standard for review of this question. In criminal cases, these standards are applied in limited circumstances. Due to the trial court's "pivotal role in the evaluation process," its ultimate conclusion on a claim of racial bias in jury selection under *Batson v. Kentucky*, 476 U.S. 79 (1986), will not be overturned unless it is clearly erroneous. *People v. Davis*, 233 Ill. 2d 244, 261-62 (2009). We apply the manifest weight of the evidence standard to certain factual determinations of the trial court. Specifically, we review a trial court's ruling on a motion to suppress under a two-part standard: the trial court's factual findings will be reversed only if they are against the manifest weight of the evidence, but the trial court's ultimate ruling on whether suppression is warranted is reviewed *de novo*. *People v. Gaytan*, 2015 IL 116223, ¶ 18.

¶ 77    Thus, in *People v. Stewart*, 105 Ill. 2d 22 (1984), this court reviewed the trial court's ruling on a motion to suppress evidence obtained pursuant to a search warrant. *Id.* at 41. The defendant had been afforded a *Franks* hearing on his claim of improper police conduct in obtaining the warrant. *Id.* at 40. The evidence at the *Franks* hearing showed that while there were a number of incorrect statements in the warrant affidavit, no evidence showed that they were inserted to deceive the magistrate or were the product of reckless disregard for the truth. *Id.* at 41. Thus, denial of the suppression motion was affirmed under the manifest error standard. *Id.* at 42.

¶ 78    We conclude that while the manifest weight of the evidence standard is applicable when reviewing the trial court's ruling on the merits after a full *Franks* hearing, the same court's ruling on the threshold question of whether to hold an evidentiary hearing invites review under a less deferential standard.

¶ 79    We, therefore, hold that review of a trial court's ruling on a motion for a *Franks* hearing is subject to *de novo* review. A reviewing court is as capable as the trial court of determining whether the motion and supporting documents have made a substantial preliminary showing.

¶ 80                    Application to the Facts of the Present Case
¶ 81    The specific question that we must address is whether defendant made a substantial preliminary showing that a false statement was intentionally, knowingly, or recklessly included by the affiant in the warrant affidavit. *Franks*, 438 U.S. at 155-56. The guilt or

- 14 -

innocence of the defendant is not relevant to this question. See *Lucente*, 116 Ill. 2d at 153. Thus, it is irrelevant that the officer's suspicions about the presence of guns and drugs at the Parkside address turned out to be well-founded.

¶ 82        The State argues that defendant's first motion was properly denied because the alleged misstatements therein were all satisfactorily explained. The nonexistent address in the warrant complaint was due to two typographical errors. Officer DeBois's three-day tenure as a Markham police officer did not necessarily contradict his claim of a three-month investigation of the defendant because he had previously been a police officer in the neighboring suburb of Harvey, Illinois. Finally, the alibi affidavits from defendant, his family members, and a family friend were self-serving and not entitled to consideration.

¶ 83        We agree that the affidavits were "self-serving" in the sense that they were provided by friends and family members for defendant's benefit. Indeed, any affidavit provided in support of a motion for a *Franks* hearing will be self-serving because a defendant is highly unlikely to submit an affidavit that undermines his position. Further, the mere fact that an affidavit serves the defendant's interests does not render it inherently incredible.

¶ 84        Thus, in *Lucente*, this court rejected the State's argument that the trial court had erred by allowing a *Franks* hearing. The defendant submitted three affidavits—his own, his wife's, and his sister's—all of which stated that he was with them at a family gathering at the sister's apartment during the time of the alleged drug sale. *Id.* at 154. "Furthermore," this court observed, all three affidavits were "sufficiently detailed so as to subject the affiants to the penalties of perjury if they [were] untrue." *Id.* Because the defendant's allegations of intentional falsehoods in the warrant affidavit were supported by "such sworn corroboration," the defendant's preliminary showing was more than a "mere denial" of guilt, and an evidentiary hearing was warranted. *Id.*

¶ 85        However, we need not consider whether defendant's first two motions were properly denied by the trial court, because we conclude that the third motion, taken together with the alibi affidavits, meets the standard of a substantial preliminary showing.

¶ 86        As an initial matter, we note the unusual facts of this case. In his warrant affidavit, the officer stated that the informant had been arrested during a traffic stop that occurred at a specific location at a specific time. The police report of the traffic stop identifies three people who were in the car that was stopped by the Markham police on Cherry Lane that afternoon: Aaron Lindsey, Miles Copeland, and Jeron Cotton. Defendant, in his third *Franks* motion, was not seeking to learn the identity of the confidential informant. He had already narrowed the possibilities to these three persons and had eliminated Lindsey from consideration.

¶ 87        Copeland has sworn that he was the confidential informant who accompanied Officer DeBois to the warrant hearing and that he perjured himself by signing an affidavit he knew to be false. He explains his conduct as being the result of threats and coercion by Officer DeBois. He has admitted that he obtained the marijuana not by purchasing it from defendant, but by committing an armed robbery.

¶ 88        The State attempts to discount the Copeland affidavit, noting that it has not acknowledged that Copeland was the confidential informant and that his identity "cannot be independently established in the record." This, of course, is the nature of the confidential informant—his identity is deliberately omitted from the record. The State would have us create a catch-22 so that even if the informant comes forward with evidence that would justify a *Franks* hearing,

- 15 -

the State would be able to defeat the motion by refusing to acknowledge that he is the informant. We reject this approach. If the informant has self-identified and the defendant has otherwise sufficiently alleged intentional, knowing, or reckless falsehoods in his *Franks* motion, whether this individual was the actual informant can be ascertained at an evidentiary hearing.

¶ 89    The State also points to the Lindsey affidavit and the second motion for a *Franks* hearing to suggest that the Copeland affidavit should be given no weight because of the inconsistencies between the two. We need not speculate as to why Lindsey falsely stated that he had purchased the marijuana at school rather than admitting that he had been a party to an armed robbery or why he might have believed that he was falsely identified by the officer as an informant after he was arrested in his mother's car, with his stepfather's gun, and he claimed ownership of the marijuana. Any explanations of his involvement can be elicited at the *Franks* hearing where he can be cross-examined by the State.

¶ 90    We are similarly unpersuaded by the State's urging that we defer to the "neutral and detached magistrate's determination" of probable cause for two reasons. First, we are not reviewing the decision of the issuing judge, and second, we will not adopt a rule that would shield a police officer's intentional, knowing, or reckless misleading of the magistrate.

¶ 91    We conclude that the Copeland affidavit, which includes several inculpatory admissions, taken together with the affidavits of four individuals who swear to have been with defendant at a different location during the day of the alleged sale, overcome the presumption of validity generally afforded a sworn warrant affidavit.

¶ 92    In *Franks*, the Supreme Court stated that the presumption of validity will be overcome and an evidentiary hearing will be justified if several conditions are met. *Franks*, 438 U.S. at 171. First, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* Defendant in the present case did more than merely assert his entitlement to a *Franks* hearing. Second, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth." *Id.* Defendant has alleged police coercion to obtain false statements for inclusion in the warrant affidavit. Third, "those allegations must be accompanied by an offer of proof" and must "point out specifically the portion of the warrant affidavit that is claimed to be false." *Id.* The Copeland affidavit meets this requirement. Finally, the defendant must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses." *Id.* Defendant has done so by providing affidavits from several alibi witnesses and from the confidential informant.

¶ 93    When these requirements are met, the next step is for the court to examine the warrant affidavit, setting aside the allegedly false or reckless statements, to determine whether sufficient content remains to support a finding of probable cause. *Id.* at 172. In the present case, if the statement of the confidential informant is disregarded, all that remains of the warrant affidavit is the officer's suspicions that illicit drug sales and gun possession were occurring at a particular address. This would not meet the probable cause standard. When, as here, the remaining content of the warrant affidavit is not sufficient to support probable cause, the defendant is entitled to a *Franks* hearing. *Id.*

¶ 94　　　　We, therefore, affirm the judgment of the appellate court. Defendant has made a substantial preliminary showing that entitles him to a *Franks* hearing, at which he, DeBois,[3] Copeland, and other witnesses can testify under oath, be cross-examined, and have their credibility assessed by the trial court.

¶ 95　　　　　　　　　　　　　　　　CONCLUSION

¶ 96　　　　In sum, we hold that a *Franks* hearing is not foreclosed on the sole basis that a confidential informant whose statements formed the basis for a warrant application appears before the judge at the warrant hearing. We further hold that appellate review of a trial court's ruling on a motion for a *Franks* hearing is *de novo*. Finally, we find that the defendant made a substantial preliminary showing that a false statement was intentionally, knowingly, or recklessly included in the warrant affidavit, and he is, therefore, entitled to a *Franks* hearing to determine whether the warrant must be quashed and the evidence obtained thereby suppressed.

¶ 97　　　　Appellate court judgment affirmed.
¶ 98　　　　Circuit court judgment reversed.

---

[3]We decline the defendant's request that we take judicial notice of several cases in which Officer DeBois has been sued for fourth amendment violations and of his imprisonment after pleading guilty to lying to the Federal Bureau of Investigation regarding a sexual assault on a woman in police custody. Although these facts are a matter of public record, and we may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy (*People v. Mata*, 217 Ill. 2d 535, 539 (2005)), this information would not have been available to the trial court when it ruled on defendant's motions for a *Franks* hearing and, as such, is not relevant to the issues raised in this appeal. Any after-acquired evidence relevant to the officer's credibility may be offered by the defendant at the *Franks* hearing.

- 17 -