# Illinois Official Reports

## Appellate Court

---

### *People v. Garcia*, 2017 IL App (1st) 133398

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IVAN GARCIA, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-3398 |
| Filed | March 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-18887; the Hon. Michael McHale, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Aliza R. Kaliski, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Justices Pucinski and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant Ivan Garcia was found guilty of the aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2008)) of his 15-year-old niece, when he was nearly twice her age, and sentenced to a total of 20 years in prison. He appeals raising a number of contentions relating to the court's compliance with Illinois Supreme Court Rules, the denial of his pretrial motions challenging the search warrant, his right to a lawyer and right to self-representation, as well as the use of propensity evidence and other trial errors. We address each in turn as we affirm.

¶ 2                                    BACKGROUND

¶ 3    Defendant was arrested and then charged with multiple counts of the above-stated sex offense after police executed a search warrant of his home and discovered a black fireproof safe box under defendant's bed containing a journal, memory card, letters, and a vibrating ring enclosed in a separate box. Police flipped through the journal discovering gang writing, drawings, and photographs of defendant, apparently with his niece. Defendant moved to suppress these items, which were seized and later used to establish his guilt for sexual abuse. He argued the box and its items were outside the scope of the warrant, which authorized the seizure of only drugs, drug paraphernalia, records of illegal drug transactions, money, and residency documents.

¶ 4    Police, however, testified at the motion to suppress hearing that the black box had an attached key inside the keyhole, which they used to open it, and they flipped through the journal in search of possible drug transaction records. This was because, in addition to the black box, officers had actually discovered drugs and $1750 of cash in defendant's bedroom. On seeing that the journal contained photos of defendant with his niece, police then appropriately obtained consent from K.M.'s mother to search the rest of the box's contents, as they had determined the journal belonged to K.M. The State argued the seizure of these items and review of them was consistent with the search warrant, which authorized officers to search the bedroom and the lockbox, and to peruse the journal. The State noted that officers had testified narcotics transactions can sometimes be embedded in codes. The court denied the motion to suppress the lockbox items, finding that it could have reasonably contained objects which were the subject of the search warrant. Likewise, the journal could have contained drug transaction records notwithstanding that its handwritten prose was described as visually feminine. Additionally, the police had obtained valid consent.

¶ 5    While the public defender's office represented defendant on his motion to suppress, defendant requested to act *pro se* in this case and two other pending cases, and he posed further challenges to the warrant's validity. He ultimately filed a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), which gives a defendant a limited right to attack the veracity of search warrant affidavits. The trial court denied defendant's *pro se* motion for a *Franks* hearing, and defendant then once again requested counsel. These matters will be discussed in further depth as we address defendant's arguments, but suffice it to say, a public defender was eventually appointed to represent defendant at trial and at sentencing.

¶ 6    At trial, K.M. testified that defendant, then age 29, sexually abused her over a nine-month period starting when she was 15 years old. Trial evidence showed defendant repeatedly preyed on K.M. when no other adult was present, grabbing her or carrying her while she was asleep to

his bedroom, where he touched her breasts and vagina. K.M. would push him away, but he persisted in these actions and eventually told her that she "couldn't be doing that to him," at which time he placed her hand on his erect penis. Some weeks after the initial violation, defendant again took K.M. to his bed. K.M. "pushed him away and then *** just kind of gave up" because it "was happening for awhile," and she "didn't know what else to do." Defendant then penetrated K.M.'s vagina digitally, performed oral sex on her, and then had sex with her. He continued to have sex with her daily for months.

¶ 7     During this period, defendant meanwhile acted as a father-like, boyfriend-like figure to K.M., teaching her to drive, attending her orchestra concerts along with K.M.'s siblings, and celebrating her birthday along with her siblings. Her mother, Virginia, was largely absent and thus defendant was the caretaker to Virginia's four children and also two of his own children.[1] K.M. did not tell anyone about the abuse because she was scared of getting into trouble since she was only 15, and defendant was her uncle. K.M. identified lubricant tubes and a vibrating ring that defendant used while penetrating her. Defendant took photographs and videos of K.M., including videos of them having sex, on his cell phone. These images were recorded on a memory card stored in the lockbox. Both defendant and K.M. had a key to the box, and the two watched videos of them having sex on the computer. Some of these images and the video were published to the jury, with K.M. giving a graphic description of what occurred during their sex acts.

¶ 8     K.M. was not his only victim. Her younger sister, D.M.[2] testified that she slept in defendant's bed when she was only seven years old. He touched her vagina both over and under her clothes. He took her clothing off and digitally penetrated her. On about five separate occasions, he took off D.M.'s clothes and performed oral sex on her. D.M. also did not tell her mom or sister because she was afraid she would get in trouble, and defendant had instructed her not to tell anyone.

¶ 9     As stated, the sexual abuse eventually came to light when police executed the search warrant and discovered the lockbox evidence. When confronted, K.M. told police the lockbox was hers, even though it was not. Initially, she attempted to hide the truth of their relationship because she did not want her uncle going to jail, she "cared for him," and thought she "loved him." A physical examination of K.M. revealed she was missing hymenal tissue, indicating there was an injury from penetrating trauma. The examining doctor testified K.M.'s injuries were consistent with a history of being sexually abused. K.M. eventually acknowledged what defendant did to her when she "found out he was raping" her sister.

¶ 10    The jury found defendant guilty on all four counts of aggravated criminal sexual abuse. Defendant filed a motion for a new trial, which was denied. At sentencing, a cousin of K.M. testified that defendant digitally penetrated her several times when she was only seven or eight years old. Defendant was sentenced to consecutive terms on the multiple counts, totaling 20 years in prison. This appeal followed.

---

[1]The record indicates two of defendant's three children lived with him.

[2]Defendant was separately charged with the predatory criminal sexual assault and aggravated criminal sexual abuse of D.M. in case No.10 CR 12153.

ANALYSIS

¶ 12    Defendant does not challenge the sufficiency of the evidence against him. Rather, he raises a number of claimed errors, but all save one have been forfeited by failure to raise a contemporaneous and/or posttrial objection. See *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988) (holding that generally to preserve an error, a defendant must raise both a contemporaneous and written posttrial objection); see also *People v. Almond*, 2015 IL 113817, ¶ 54 (reaffirming *Enoch*). Defendant nonetheless relies on two exceptions to the forfeiture rule. One exception is the plain error doctrine, which permits a reviewing court to consider unpreserved error in exceptional circumstances where the evidence is closely balanced or the alleged error was so prejudicial that it deprived defendant of a fair trial. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Easley*, 148 Ill. 2d 281, 323 (1992). The initial step in any plain error analysis is to establish that there was error in the first place. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005). Defendant does not argue the evidence was closely balanced such that any alleged error threatened to tip the scales of justice against him. Indeed, he cannot argue that because the evidence in this case was quite simply overwhelming given K.M.'s testimony, the videotape, the lockbox evidence, the supporting medical testimony, and D.M.'s testimony showing defendant's propensity for sex crimes against minor females. Defendant therefore largely argues second-prong plain error.

¶ 13    Defendant also cites the constitutional exception to the forfeiture rule, relying on the supreme court's recent case, *Almond*, 2015 IL 113817, ¶ 54, and argues the interests of judicial economy favor addressing on direct appeal certain claims, like those relating to his suppression motion and the warrant affidavit, since these constitutional issues were raised at trial and can later be raised in a postconviction petition. See also *Enoch*, 122 Ill. 2d at 190. Like the plain error rule, this is yet another exception to forfeiture but instead results in reviewing a claim on its merits. *Almond*, 2015 IL 113817, ¶ 54; *People v. Cregan*, 2014 IL 113600, ¶¶ 18-19; but see *People v. Cosby*, 231 Ill. 2d 262, 272-73 (2008) (where the supreme court criticized the appellate court for considering a forfeited fourth amendment issue under the constitutional exception and not the plain error rule and stated, "the mere fact that an alleged error affects a constitutional right does not provide a separate ground for review, for 'even constitutional errors can be forfeited' "); *cf. People v. McDonald*, 2016 IL 118882, ¶ 47 (declining to decide whether the constitutional exception applies where the same result is reached under plain error too).

¶ 14    We will reference these principles where necessary as we address each of defendant's multiple issues in turn.

## *Pro Se* Representation

¶ 16    As stated, defendant acted *pro se* for a limited period when he filed his motion for a *Franks* hearing. Defendant first contends he did not validly waive his right to counsel because the trial court failed to admonish him of the nature of the charges against him and minimum sentence, as required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). Defendant argues that the alleged error constitutes plain error and asks that we remand the matter for a new *Franks* hearing with counsel. See *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006) (holding that structural errors include denial of counsel); *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010) (equating second-prong plain error with structural error).

¶ 17    The State responds that defendant forfeited this issue by failing to preserve it, that there was no clear and obvious error amounting to plain error because the court substantially complied with Rule 401, and that defendant's waiver of counsel was knowing and voluntary without any demonstrated prejudice. We agree with each of these arguments.

¶ 18    The federal constitution's sixth amendment guarantees a criminal accused the right to counsel and the correlative right to act *pro se*. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). A defendant may waive his constitutional right to counsel as long as it is voluntary, knowing, and intelligent. *Id.* Rule 401(a) governs the trial court's acceptance of a defendant's waiver. *Id.* The court must admonish defendant of the nature of the charges, the minimum and maximum sentences (including penalties due to prior convictions or consecutive sentences), and that he has a right to counsel and, if indigent, appointed counsel. Ill. S. Ct. R. 401 (eff. July 1, 1984). Nonetheless, strict compliance with Rule 401(a) is not always required, and substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily and the admonishment defendant received did not prejudice his rights. *Haynes*, 174 Ill. 2d at 236. For the reasons to follow and in light of the entire record, we conclude there was substantial compliance.

¶ 19    First, although the actual arraignment is not part of the record on appeal, the record indicates that defendant was arraigned in this case[3] and thus made aware of the charges against him. See *People v. Banks*, 378 Ill. App. 3d 856, 861 (2007) (any doubts arising from an incomplete record are construed against the defendant as the appellant); 725 ILCS 5/113-1 (West 2008); *People v. Maust*, 216 Ill. App. 3d 173, 181-82 (1991) (the purpose of arraignment is to inform the defendant of the enumerated charges against him and of his right to an attorney); *cf. People v. Langley*, 226 Ill. App. 3d 742, 749-50 (1992) (admonishments at arraignment could not suffice for Rule 401(a) purposes). Moreover, the record shows defendant was present for the motion to suppress hearing and pretrial motion hearing on other-crimes evidence, both of which showed the criminal sex abuse charges resulted from defendant's various sex acts committed against his 15-year-old family member. See 720 ILCS 5/12-16(d) (West 2008) ("The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim."). Defendant never indicated to the court that he did not understand the charges against him, and he understandably has not done so here. See *People v. Johnson*, 119 Ill. 2d 119, 131 (1987).

¶ 20    Our examination of the record also reveals that defendant was adequately informed of the penalties. On November 10, 2011, the day defendant declared he wanted to act *pro se*, the trial court admonished defendant that he was facing various charges in three different criminal cases, including the present case No. 09 CR 18887, and that these cases could carry consecutive and extended terms of up to 60 plus years.[4] With regard to this specific case, the

---

[3]The date of the hearing in the report of proceedings that references defendant's prior arraignment is December 7, 2007. This date cannot be correct since it is before defendant's actual crime was committed. In addition, the common law record indicates a hearing took place on December 7, 2009.

[4]While we know that case No. 10 CR 12153 related to defendant's acts against D.M. and involved the Department of Children and Family Services, the record does not contain the exact charges, nor does it make clear the charges in case No. 09 CR 18886 (which we presume involved the drugs discovered in defendant's home).

- 5 -

trial court admonished defendant that he was subject to Class 1 felonies punishable by up to 15 years' imprisonment and that he could be "found guilty of different counts and those counts could run consecutively," meaning defendant could "possibly serve 15 years for each one of the counts alleged in the six-count indictment." In actuality, the first two charges of criminal sexual assault were Class 1 felonies (4- to 15-year terms) (see 720 ILCS 5/12-13(b)(1) (West 2008); 730 ILCS 5/5-8-1(d)(4) (West 2008)), while the next four charges of aggravated criminal sexual abuse were Class 2 felonies (3- to 7-year terms) (see 720 ILCS 5/12-16 (West 2008); 730 ILCS 5/5-8-1(d)(5) (West 2008)). The court made clear to defendant that he could face substantial prison time, and defendant received a substantially shorter sentence than the provided admonishments. Defendant concedes he was advised of the most serious class of offense.

¶ 21    The court also made clear that he had a right to a lawyer even if he was indigent. Over five pages in the transcript, the court advised defendant of the seriousness of the charges, noting "[t]his is your life at stake," and that defendant was at an extreme disadvantage in representing himself before an experienced State's Attorney given the technical rules of evidence and tactical decisions involved. The court also inquired about defendant's educational history. The record shows defendant finished high school and that he was articulate and cognizant of the proceedings. The court stated, "You have a constitutional right to throw your life away, and if that's what you're going to do, then that's what you're going to do. But I need to make sure that you understand that if you throw your life away and if you decide that you are going to throw your life away, you do it freely and knowingly and intelligently and voluntarily." Defendant stated he understood that. The court stated defendant would not receive special consideration or the public defender's investigative services. The court stated it was not inclined to appoint standby counsel, but would make that decision at a later date. The court gave defendant 12 days to contemplate, as it should not be a "snap decision" or an "emotional decision," but rather, a "rational" one. Twelve days later, defendant made a clear and articulate statement of his desire to waive counsel, and the trial court also clearly stated that defendant would not have the public defender's services and then allowed the public defender to withdraw.

¶ 22    The record shows that this short waiting period, rather than vitiating the effectiveness of the trial court's Rule 401 admonishments as defendant argues, actually buttressed those admonishments and defendant's knowing and intelligent waiver of counsel. See *Haynes*, 174 Ill. 2d at 241 (concluding admonishments given almost three months before the defendant accepted waiver of counsel were sufficient under Rule 401). The State concedes the court did not inform defendant of the minimum sentences but notes that even assuming it had, nothing in the record shows defendant would have changed his mind as to representation. See *id.* at 243-44; *Johnson*, 119 Ill. 2d at 134. We agree. Defendant had challenged his attorney's strategy relating to the *Franks* motion for about a year. Defendant indicated he wished to proceed *pro se* some five months before the November 2011 hearing, which is where he declared he would represent himself. Even in the face of an extensive term, defendant chose to proceed *pro se* on his *Franks* hearing motion. The motion itself demonstrated a degree of legal sophistication with regard to arguments and legal citations. In addition, defendant was ultimately represented by counsel at trial, sentencing, and posttrial, and he cannot establish any prejudice due to the lack of counsel on his application for a *Franks* hearing.

¶ 23    In conclusion, defendant has forfeited this matter and, even putting forfeiture aside, the record demonstrates that there was substantial compliance with Rule 401 and thus no error. To

the extent there was any inadequacy in how the trial court presented the Rule 401 admonishments, it did not impede defendant from giving a knowing and intelligent waiver of counsel on his *Franks* motion. See *People v. Maxey*, 2016 IL App (1st) 130698, ¶¶ 40, 42. Any inadequacy therefore did not affect defendant's right to a fair trial or challenge the integrity of the judicial process. Defendant's claim fails.

¶ 24                                  Denial of *Franks* Motion

¶ 25       Defendant next contends the trial court erred in denying his *Franks* motion and requests remand for another hearing. Defendant asks that we review this under the constitutional-issue exception, framing the matter as one involving the fourth amendment. Whether we view the motion for a full *Franks* hearing under a constitutional guise or plain error, we reach the same result. See *McDonald*, 2016 IL 118882, ¶ 47.

¶ 26       The federal and state constitutions guarantee against unreasonable search and seizure, and so, no warrant shall be issued without probable cause. *People v. Caro*, 381 Ill. App. 3d 1056, 1061 (2008). A detached judicial officer determines probable cause based on the information in the sworn statements or affidavits presented to the magistrate. *Id.* at 1061-62.

¶ 27       In this case, to prove probable cause, Chicago police officer Ramirez filed a complaint to obtain a search warrant on September 25, 2009, for defendant's person and premises, a basement apartment at 5203 South Troy Avenue in Chicago, and to seize any drugs inside. Officer Ramirez and a confidential informant, J. Doe, signed the complaint and swore to its truth before a judge. Officer Ramirez attested that Doe stated that on September 24, she went to the basement apartment in Chicago for "the purpose of purchasing cannabis." She knocked on the apartment's side window and walked to the back of the building. Doe then purchased weed, a large bag of which was situated on a coffee table, from "Menace" in exchange for $60. Doe had known Menace for about five years and had purchased weed from him about five times in the past month at the Troy Avenue address. Officer Ramirez and Doe later drove to the address, and she identified the drug buy apartment and also positively identified defendant from a computer-generated photo. As stated, the magistrate judge issued the warrant based on this sworn information. Defendant now challenges its veracity, denying that he sold drugs to Doe.

¶ 28       *Franks* gives a defendant a *limited* right to attack the veracity of affidavits like that of Officer Ramirez. *People v. Lucente*, 116 Ill. 2d 133, 153 (1987). To overcome the presumption of validity as to the warrant affidavit, a defendant must make a substantial preliminary showing that the warrant's affiant included a false statement in the affidavit, either knowingly and intentionally *or* with reckless disregard of the truth. *Franks*, 438 U.S. at 155-56; *People v. Chambers*, 2016 IL 117911, ¶ 35. The allegedly false statement must be necessary to the probable cause finding. *Franks*, 438 U.S. at 156. The linchpin of the *Franks* procedure is the "substantial preliminary showing" requirement. *Lucente*, 116 Ill. 2d at 147. To establish a substantial showing, the attack must not be conclusory and must be supported by more than a mere desire to cross-examine, while any allegations of deliberate falsehood or reckless disregard of the truth must be accompanied by an offer of proof. *Chambers*, 2016 IL 117911, ¶ 35. Thus, the standard lies somewhere between mere denials and proof by a preponderance of the evidence. *Lucente*, 116 Ill. 2d at 152.

¶ 29       Defendant contends he made this requisite showing for a *Franks* hearing. In support, defendant contends evidence showed his wife, Michelle Rodriguez, was the confidential

informant Doe and source of the search warrant, a fact the State concedes, and that she lied to the judge about having bought drugs from defendant. Rodriguez did this at the behest of Officer Ramirez, who stated that through her lie she could get custody of their children from defendant.

¶ 30 The State responds that defendant again forfeited this matter and even taking the affidavits as true, defendant cannot establish that Officer Ramirez acted with reckless disregard of the truth. For the reasons to follow, our *de novo* review reveals defendant cannot sustain his claim. See *Chambers*, 2016 IL 117911, ¶ 79.

¶ 31 In support of the *Franks* motion, defendant attached Rodriguez's affidavit, dated August 9, 2012. In it, Rodriguez stated she had told Officer Ramirez in August 2009 that she believed defendant was a "drug dealer" and that she wanted custody of her children back. After a failed attempt to locate defendant at another apartment, Officer Ramirez contacted Rodriguez again. Per her affidavit, they appeared in front of a judge and "Officer Ramirez told me to say that [defendant] sold me drugs so that they able [*sic*] to get a warrant to raid the house." Officer Ramirez also requested that Rodriguez's son draw a map of the apartment's layout. Defendant's son attested that Officer Ramirez asked questions about the location of the apartment, how the inside looked, and where defendant kept his money and drugs, and verified that he drew a map of the apartment for Officer Ramirez.

¶ 32 As the circuit court in this case pointed out during oral arguments on the motion, nothing indicates Rodriguez conveyed to Officer Ramirez that she was not telling the truth about defendant's drug activity, as described in the complaint for the search warrant. The deliberate falsity or reckless disregard of the truth applies only to the affiant—here, Officer Ramirez—and not to any nongovernmental informant like Rodriguez. *Chambers*, 2016 IL 117911, ¶ 36. The affidavits attached to defendant's motion did not supply proof that Officer Ramirez was untruthful, let alone that Rodriguez was untruthful since both Rodriguez and her son were aware of defendant's drug activity, and the son knew of the location of drugs within the apartment. Moreover, simply because Rodriguez had an ulterior motive (gaining custody of her children) to help police does not directly support the conclusion that her search warrant statements were false. Regardless, the affidavit falls far short of showing that Officer Ramirez should have known her statements to be false or that he forced her to lie to the warrant's issuing judge. We agree with the State that Officer Ramirez cannot be found to have recklessly disregarded the truth on this evidence. *Cf. Lucente*, 116 Ill. 2d at 152 (the greater the showing that the informant blatantly lied or gave substantially false information to the officer-affiant, the greater the likelihood that the officer-affiant exhibited a reckless disregard of the truth in relying on the information). What is more, we note that both Officer Ramirez and Rodriguez appeared before the issuing judge, thus providing that court with at least the opportunity to test Rodriguez's statements. This factor militates against defendant, as does the fact that police did not fabricate Doe's existence. See *Chambers*, 2016 IL 117911, ¶ 63 (noting the presence of the informant before the issuing judge is a factor to be considered when deciding when a preliminary showing was made).

¶ 33 Defendant nonetheless points to his motion to reconsider and to Rodriguez's second attached affidavit, dated December 10, 2012. This affidavit was executed about four months after the first affidavit, and a month after the hearing on defendant's *Franks* motion. In the second affidavit, Rodriguez disavows that the drug transaction took place as described in the complaint and also explicitly states that Officer Ramirez told her to lie to the issuing judge.

¶ 34    Defendant's argument as to this affidavit suffers from several glaring defects. First, defendant fails to make any argument on appeal as to the standards involved in a motion to reconsider, thus forfeiting an already forfeited issue. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("Points not argued are waived."). We note that before the trial court, he did not seek to amend or reopen proofs when he filed his motion to reconsider the judgment, nor does he explain the discrepancy between Rodriguez's first affidavit, *which does not directly implicate Officer Ramirez's truthfulness as an affiant*, and the second affidavit, which does. See *People v. Pollitt*, 2011 IL App (2d) 091247, ¶ 19. The discrepancies and fact that defendant obtained the second affidavit *after* the hearing provide further support for denying his *Franks* motion, as they suggest some sort of collusion between Rodriguez and defendant. The enhanced story seems fanciful at best.

¶ 35    Defendant further contends he presented affidavits from neighbors showing that on a practical level the transaction could not have occurred as described in the affidavit for the warrant. To advance that he had an alibi on the day of the drug buy, defendant points to his mother's affidavit, written in Spanish and stating defendant was with her from 8 a.m. until 2:45 p.m. but not at his apartment. Defendant also relies on a school calendar showing there was a parent open house at 6 p.m., which he claims to have attended. Defendant has appended the English-language version of his mother's affidavit to his brief, but it is not officially part of the appellate record, and there is no evidence that the translated version was presented to the circuit court. However, attachments to briefs cannot be used to supplement the record, and this court cannot consider evidence that is not part of the record. *People v. Heaton*, 266 Ill. App. 3d 469, 476 (1994). We reach the same conclusion as to the affidavit of defendant's neighbor stating that there was a fence surrounding his apartment plus a locked gate, which tenuously suggests Rodriguez could not have entered. The Spanish-language version is attached to defendant's motion, while he has provided the English-language version only as part of his brief. We cannot consider the affidavit. *Id.*

¶ 36    Even if we could consider the attached affidavits and take them as true, defendant's cause for a *Franks* hearing would still fail. With regard to defendant's own affidavit, we observe that he provides a detailed, hour-by-hour account of his day away from the apartment from 7:30 a.m. until midnight. While in some instances, detail may lend an air of credibility to a defendant's alibi, that is not the case here. See *Lucente*, 116 Ill. 2d at 154 (noting that supporting affidavits need to be sufficiently detailed such that affiants can be subject to penalties of perjury if untrue). We find it incredible that three years after the date in question, defendant would remember, among other things, the order in which he chauffeured his nephew, sons, mother, and niece around town for more than 16 hours. Similarly attenuated is the suggestion that his mother, in her own affidavit, accurately recalled the precise meals she and defendant ordered for lunch that day. Moreover, in spite of his mother's affidavit and the school calendar, the complaint for the search warrant does not specify the drug buy time, and defendant still could have been home for a short period to perform the buy after 2:45 p.m. or sometime in the evening. Indeed, his apartment was under 10 minutes away by car from the high school where he claimed to be for several hours after 5 p.m. Regardless, it cannot be said that an alibi-type showing will *always* be sufficient (see *id.* at 152), especially in a case like the present where defendant has failed to show the known confidential informant provided a false statement to the officer-affiant or one that should have been disregarded by the officer-affiant. This brings us to the final point, even taking the neighbor's affidavit as true, it does not

necessarily demonstrate that Officer Ramirez knew the gate to be locked and inaccessible such that he should not have believed Rodriguez's statement for the search warrant. It also does not preclude the possibility that Rodriguez had a key to gain entry. The affidavit simply does not prove any reckless disregard of the truth by the police officer.

¶ 37    We have carefully balanced the statements in the warrant affidavit against those challenging the warrant, and for all of the reasons set forth above, the evidence defendant relies on does not refute the warrant affidavit allegations. As such, defendant's affidavit of "I didn't do it" amounts to no more than an unsubstantiated denial, which is insufficient to garner the *limited* right to a *Franks* hearing. See *id.* at 153-54. We reject defendant's contentions in support of his *Franks* motion on the merits. We also note defendant has forfeited this matter and failed to establish error, let alone plain error.

¶ 38                                          Motion to Suppress

¶ 39    Defendant next contends the trial court erred in denying his motion to suppress. Defendant does not dispute that the police lawfully entered his apartment to execute the search warrant for drugs, drug paraphernalia, money, and drug transaction records. He argues, however, that the warrant did not authorize police to search and seize the lockbox or its contents of a woman's journal and memory card. Defendant argues the officers thus "exceeded the scope of the warrant by seizing unrelated items that were not obviously or immediately incriminating" in violation of the plain view doctrine. Defendant asserts these actions violated his federal and state constitutional right against unreasonable search and seizure (see *Caro*, 381 Ill. App. 3d at 1061) and notes the video was "key" to his conviction.

¶ 40    Although the State asserts that defendant forfeited this error by failing to include it in his posttrial motion and cannot establish plain error, we review the alleged fourth amendment violation on the merits since it is a constitutional issue litigated at trial that can be raised in a postconviction petition. See *Almond*, 2015 IL 113817, ¶ 54. We note that defendant cannot sustain his claims that the search and seizure exceeded the scope of the warrant and violated the plain view doctrine under either exception to the forfeiture rule.

¶ 41    On a motion to suppress evidence, the defendant bears the burden of showing the search and seizure were unlawful. *Cregan*, 2014 IL 113600, ¶ 23. A trial court's ruling on a motion to suppress presents both questions of law and fact. *People v. McCarty*, 223 Ill. 2d 109, 148 (2006). The court's findings of historical fact will be upheld unless they are against the manifest weight of the evidence, while the ultimate determination of whether the evidence should have been suppressed based on those fact findings is a legal question garnering *de novo* review. *Cregan*, 2014 IL 113600, ¶ 22. To be valid, a search warrant must state with particularity the place to be searched and the persons or things to be seized. *People v. Harris*, 2015 IL App (1st) 132162, ¶ 28; 725 ILCS 5/108-7 (West 2008). This requirement is meant to safeguard against general search warrants. *People v. Dorris*, 110 Ill. App. 3d 660, 664 (1982). In looking for items named in a search warrant, the officers are free to search anywhere the object of the search could reasonably be expected to be found. *People v. Economy*, 259 Ill. App. 3d 504, 512 (1994). Whether a particular search is reasonable depends on the facts and circumstances giving rise to the search and also the nature of the search itself. *Id.* This determination must be made by balancing its intrusion on an individual's fourth amendment interests against the promotion of legitimate governmental interests. *Id.* The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's

actions under the facts and circumstances before him then, regardless of his underlying intent or motivation. *Id.*

¶ 42    Here, the trial court found the warrant authorized police to search the lockbox for proof of residency or drug transaction records and review the journal in relation to drug transaction records as well. We agree with the State and cannot say these factual findings were against the manifest weight of the evidence nor the legal conclusions incorrect. Pursuant to the warrant, officers searched defendant's bedroom, where they discovered cannabis in the bedroom closet and $1750 of cash in defendant's dresser drawer. Therefore, in happening upon a 12-by-10-inch locked, fireproof box hidden under defendant's bed in this very same bedroom where police had found drugs, it was only reasonable that police should open the box to determine whether it also contained evidence of drugs or drug transactions. See *Dorris*, 110 Ill. App. 3d at 665 (police who were authorized to search car for handbag and currency could seize and search a change purse found in a plastic bag along with the approximate amount of missing currency). The trial court credited police testimony that they flipped through the journal in search of narcotics-related evidence and their explanation that such items sometimes contain hidden codes relating to drugs. Defendant argues the journal *contained* female handwriting, which indicates it was not a record for drug transactions. We agree with the trial court that the journal could have contained drug records, notwithstanding the author's gender since it was found in a locked box and drug-filled room. Moreover, as a reviewing court, we are not at liberty to weigh witness credibility or resolve conflicts in testimony, for that is the province of the trial court. See *People v. Hillsman*, 362 Ill. App. 3d 623, 632 (2005). We also note the journal was not even introduced at trial.

¶ 43    Defendant's reliance on *People v. Harmon*, 90 Ill. App. 3d 753 (1980), is misplaced. The *Harmon* court held the CB radio, discovered in the back of a TV set and on which defendant's theft conviction was based, "was unquestionably not an item named in the search warrant," which too generally authorized the seizure of only "large items" of "stolen railroad property." *Id.* at 756-57. Nor was the CB radio immediately apparent under plain view as evidence of another crime since it was consistent with the defendant's status as a junk collector. Unlike in *Harmon*, here the officers lawfully searched and then seized the lockbox (*i.e.*, by collecting and opening it) within the scope of the warrant. See *Horton v. California*, 496 U.S. 128, 133 (1990) (a seizure deprives the individual of dominion over his property). Nothing in the record shows that, prior to obtaining consent, officers went beyond flipping through the journal or simply observing the lockbox contents of a vibrating ring, memory card, and letters.

¶ 44    As the State notes and the trial court found, during the follow-up investigation by police and on discovering that the lockbox owner was K.M., police then appropriately relied on K.M.'s mother to give consent to further search and seize the box's contents. This finding was supported by testimony that police only seized the items contained in the lockbox *after* obtaining consent from Virginia. In his opening brief, defendant does not dispute that consent is an exception to the need for a search warrant or that Virginia had authority to provide consent for further search and seizure of the lockbox contents. See *People v. Absher*, 242 Ill. 2d 77, 83 (2011); *People v. Daniel*, 238 Ill. App. 3d 19, 34 (1992). That K.M. later disavowed ownership of the lockbox and its contents at trial does not vitiate K.M.'s claim to ownership during the warrant's execution, nor vitiate the reasonableness of the police in relying on her claim to ownership. See *People v. Brooks*, 187 Ill. 2d 91, 127-28 (1999) (noting a defendant cannot rely on trial evidence to reverse a motion to suppress ruling, particularly where he

waives the matter); *Daniel*, 238 Ill. App. 3d at 35; see also *People v. LeFlore*, 2015 IL 116799, ¶ 24 (exclusionary rule invoked when police conduct is deliberate such that deterrence is effective and culpable such that deterrence outweighs the cost of suppression). We reject defendant's challenge raised in his reply brief to Virginia's authority to consent on K.M.'s behalf, since he failed to raise this matter both at trial and in his opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("Points not argued are waived and shall not be raised in the reply brief."). In his opening brief, defendant argued only that police improperly seized the items before obtaining consent from Virginia.

¶ 45    Finally, even assuming police did not obtain consent to search and seize the lockbox contents, we conclude they could do so under the plain view doctrine, even though this was not argued at the motion to suppress hearing. Plain view requires (1) that an object's incriminating character be immediately apparent and (2) that the officer have a lawful right of access to the object itself. *Hillsman*, 362 Ill. App. 3d at 632. The plain view doctrine requires an officer to have probable cause to associate the evidence with criminal activity before he may invoke the doctrine to seize the evidence. *Id.* Although probable cause does not require evidence sufficient to convict, it requires more than a "mere suspicion." *Id.*

¶ 46    Prior to executing the warrant, the police had received a tip that defendant was having sexual relations with a minor in his family and that there were accompanying photos or videos. They knew defendant had prior sex offense convictions, and on entering the apartment in execution of the search warrant, they saw defendant exiting his bedroom along with K.M., who they discovered was age 15, and also recovered defendant's sex offender registration form. We have already determined the scope of the warrant authorized police to open the lockbox. Since the lockbox was hidden under the bed and contained a photograph of defendant with a minor female within a journal, as well as a vibrating ring and memory card, and given their tips and search warrant discoveries, police had probable cause to believe this was evidence of a sex crime. See *People v. Payton*, 317 Ill. App. 3d 909, 913 (2000) (probable cause exists when the facts and circumstances known to the officer are sufficient to warrant a reasonable person in believing the defendant committed an offense); *People v. Watkins*, 293 Ill. App. 3d 496, 503 (1997). Thus, in the course of legally searching for drugs, they happened upon other evidence of an incriminating character. Contrary to defendant's contention otherwise, the plain view doctrine actually authorized seizure of these items.

¶ 47    For the reasons set forth above, defendant's contentions of error regarding the suppression ruling fail.

¶ 48                    Denial of *Pro Se* Representation at Trial

¶ 49    Defendant contends the trial court erroneously denied defendant his constitutional right to represent himself at trial, in spite of his unequivocal and timely request to do so. He asks that we reverse and remand for a new trial.

¶ 50    The State responds that defendant forfeited this issue. Defendant once again invokes the constitutional exception to the forfeiture rule. Although this issue of self-representation is a matter of record, it was not necessarily challenged during trial, making the exception defendant seeks inapplicable. See *McDonald*, 2016 IL 118882, ¶ 47. Again, regardless of whether we view this on the merits or as a matter of plain error, we reach the same result. See *Gonzalez-Lopez*, 548 U.S. at 148-49 (holding that structural errors include denial of self-representation); *Thompson*, 238 Ill. 2d at 613-14 (equating second-prong plain error with

structural error). Defendant has failed to establish any error. Defendant's somewhat contradictory argument earlier in this appeal that we remand the case so he can *have representation* at his *Franks* hearing is not lost upon us.

¶ 51    As stated, a defendant has a constitutional right to represent himself in criminal proceedings. *People v. Baez*, 241 Ill. 2d 44, 115 (2011). However, he may lose that right by engaging in serious and obstructionist misconduct, or if he cannot make a knowing and intelligent waiver. *People v. Fritz*, 225 Ill. App. 3d 624, 626 (1992). The requirement that a defendant make an unequivocal request to waive counsel aims to prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*. *Baez*, 241 Ill. 2d at 116. A court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation, and must indulge in every reasonable presumption *against* waiver of the right to counsel. *Id.* Each case will be judged on its particular facts and circumstances, including the defendant's background, experience, and conduct. *Id.* We review the matter for an abuse of discretion. *Id.*

¶ 52    In reviewing the record as a whole, we cannot say the trial court abused its discretion in declining his second request to act *pro se* given defendant's back-and-forth and obstructionist conduct in this case. Some background is necessary. The public defender's office represented defendant on his motion to suppress in 2011. Some months later, defendant cited communication problems with his attorney, and the trial court directly addressed defendant's concerns in a hearing outside the State's Attorney's presence, ultimately declaring that defendant's attorney was not ineffective. The court noted that if defendant wanted another public defender, defendant would need to address the matter to the public defender's office. The record indicates defendant did just that, having numerous conversations with the office supervisor over some three months. At a July 2011 hearing, as the attorneys were proceeding on the other-crimes motion by the State, defendant requested a continuance to speak with the office supervisor one more time. The court denied that request and noted that another public defender was not likely to take the place of defendant's attorney, Richard S. Kruss. The court stated that defendant could hire a private lawyer, but if indigent, the court was required to appoint the public defender assigned to defendant's case. In November 2011, defendant firmly announced he wished to proceed *pro se* on the *Franks* motion, which his defense counsel had already filed. As set forth above, the trial court allowed defendant to do so.

¶ 53    The court admonished defendant that if he changed his mind, the court could reappoint the public defender's office, but then stated *several times* that once the matter went to trial, defendant could not change his mind and ask for a lawyer at the last minute. The court stated defendant would not receive special consideration simply because he was proceeding *pro se*. The court then patiently allowed defendant to review evidence and prepare his motions. As of July 2012, some eight months after defendant requested to proceed while acting *pro se*, the court provided defendant another month to present his *Franks* motion. Defendant requested standby counsel to consult with regarding his motion, but the court noted it had already declared standby counsel would not be available when defendant decided to proceed *pro se*. Defendant filed his *Franks* motion in September and the State filed its response in October. At the November 2012 hearing, as the parties were preparing to argue on the motion, defendant requested a continuance to review photographs of his home yet again. Defendant also noted he

needed additional time to review the State's cases. The court denied these requests, noting defendant had already seen the photographs and had four weeks to review the State's response.

¶ 54    After defendant's *Franks* motion was denied at this same hearing, the court declared it would be setting the matter for trial at the next court date. It was at this point that defendant asked for a lawyer to be appointed other than the public defender. The court again stated there was no evidence the public defender had been ineffective or there was a conflict of interest. The court declared that either defendant accepted the public defender's office or he had to represent himself. Defendant then stated he wished to have the public defender's office represent him. Public defender Kruss appeared again on defendant's behalf.

¶ 55    At the next court date in January 2013, the court allowed defendant to file *pro se* his motion to reconsider the *Franks* hearing since he had represented himself on the matter but then noted public defender Kruss had been appointed at the last court date and was representing defendant. Two days later, defense counsel in defendant's presence noted the matter was ready to be set for trial. On February 8, 2013, the next court date, defendant stated that he was "under the impression that Mr. Kruss was going to withdraw from the case" and declared he was going to proceed *pro se*. The court denied defendant's request, noting the case was to be set for trial:

> "I find that the reason why you're asking to go *pro se* once again is to delay the trial. You have a right to have a trial, and you have a right to represent yourself, but you can't go back and forth between representing yourself or not to delay the proceedings."

When the court asked defendant whether he wanted a bench or jury trial, defendant stated he wanted to file a motion and have a hearing on the consent to search the lockbox discovered in his room. The court again asked if defendant wanted a bench or jury trial, to which defendant responded that he would like to proceed *pro se* "even without any continuance." The court indicated a jury trial.

¶ 56    Viewing the above-stated facts and defendant's conduct as a whole, defendant cannot overcome the presumption against waiver. Defendant's vacillation following the *Franks* hearing actually militated against permitting him to represent himself *pro se* at trial. Defendant's final request was not in the least unequivocal given all the preceded it. We further defer to the trial court's finding that defendant was seeking to delay proceedings by flip-flopping about counsel yet again on the day the case was to be set for trial and by requesting a continuance on his long-ago decided motion to suppress. As *People v. Burton*, 184 Ill. 2d 1, 24 (1998), noted, the timing of a defendant's request is also significant. A number of courts have held that a defendant's request is untimely where it is first made just before the commencement of trial, after trial begins, or after meaningful proceedings have begun. *Id.*; see also *People v. Rasho*, 398 Ill. App. 3d 1035, 1042 (2010) (upholding the denial of self-representation where the defendant's request to proceed *pro se* on the day of trial was not timely and was accompanied by an implicit motion for a continuance). Defendant's behavior in that regard was consistent with his constant wish for continuances throughout the pretrial period. In short, defendant's contention fails on the merits and under plain error.

¶ 57                                    *Voir Dire* Juror Issues

¶ 58    Defendant next argues he did not receive a fair and impartial jury trial due to errors committed during *voir dire*. He first asserts an Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) violation. Rule 431(b) requires the trial court during *voir dire* to ask each potential juror individually or in a group whether they understand and accept certain basic criminal law

- 14 -

principles, including that the State must prove defendant guilty beyond a reasonable doubt before he can be convicted. Defendant contends, and the State concedes, that the court failed to ask the jurors whether they *accepted* this principle (although both agree the court did inquire whether they understood it). Therefore, the court did not comply with Rule 431(b) in that specific regard. See *Thompson*, 238 Ill. 2d at 607.

¶ 59    The State nonetheless contends defendant cannot establish plain error with respect to this forfeited error because the record betrays no prejudice. We agree. In plain error review, the burden of persuasion rests with the defendant, and failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury. *Id.* at 613, 614. Here, defendant has not demonstrated juror bias tied to the trial court's noncompliance with Rule 431(b). He has not pointed to evidence showing any juror did not accept the State's burden of proof. The trial court gave the jury instructions during *voir dire*, and on inquiry, none raised their hands to indicate a lack of understanding or acceptance. Contrary to defendant's argument, the error was not so serious that it compromised the fairness of defendant's trial or challenged the integrity of the judicial process. See *id.*

¶ 60    Defendant's second claimed error relates to an interchange between the judge and one jury member who expressed discomfort with English, an error he claims was compounded by the Rule 431(b) noncompliance. The interchange occurred just after the final jurors were selected and told to return the following day for the trial. One of those jurors, Sylwia Ogrodnik, raised her hand asked whether they had to stay until 3:30 p.m. or 4 p.m. the next day as well. The court responded he would attempt to finish by 5 p.m. It was then that she stated, "I don't feel very comfortable with my English. I understand but not everything. That's why I don't know. I'm like, you know. No, I want to be fair for you guys, you know. I want to understand everything, but really some words I don't understand." The judge responded, "Miss Ogrodnik, I do understand your concern. I appreciate that. But we went through about 20 questions together and you seemed to do very well with English." He then stated, "If you don't understand a certain word here or there, you will be able to rely on your fellow jurors when it comes time to deliberate." Defendant argues that this juror's responses during *voir dire* did not establish her English proficiency. He maintains the court should have further questioned this juror and replaced her with an alternate if the court concluded she lacked English proficiency such that it affected her ability to serve as a juror. This very argument betrays the speculative nature of defendant's claim and the reason why we have the preservation of error rules in the first place.

¶ 61    Matters relating to jury selection and management are generally within the discretion of the trial court. *People v. Roberts*, 214 Ill. 2d 106, 121 (2005). It is not the job of this court to second-guess the trial judge's estimation of a juror's adequacy when the defense counsel himself has declined to challenge that juror for cause. See *People v. Metcalfe*, 202 Ill. 2d 544, 555 (2002) ("We decline to impose a duty upon a trial court to *sua sponte* excuse a juror for cause in the absence of a defendant's challenge for cause or exercise of a peremptory challenge."). Defense counsel apparently thought juror Ogrodnik fluent enough in English that he did not think to raise an objection regarding her service. When the court individually asked juror Ogrodnik numerous questions, she provided answers that were both responsive and appropriate. The trial court noted this on the record in dismissing juror Ogrodnik's concerns. Also, given the timing of her statement regarding English, the court very well could have found Ogrodnik was angling to be released from service because she was not getting out of trial until

5 p.m., although this could have been clarified if defendant had raised a contemporaneous objection. Reading her *voir dire* as a whole, the record shows that despite her concerns, juror Ogrodnik was able to understand English. See 705 ILCS 305/2(3) (West 2008); *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 27. The record therefore does not show that the court's conduct in retaining juror Ogrodnik thwarted the selection of a fair and impartial jury such that the court abused its discretion. See *Metcalfe*, 202 Ill. 2d at 559. Defendant has failed to establish error, let alone plain error. See *id.* at 557, 559.

¶ 62    We thus reject defendant's argument that the alleged errors relating to Rule 431(b) and juror Ogrodnik were so egregious individually or cumulatively that he was denied a fair and impartial jury, when the record simply does not support his forfeited contention. Defendant's claim fails.

¶ 63                                    Hearsay Evidence Claim

¶ 64    Defendant next contends the State's witness testified to impermissible hearsay, which is an out-of-court statement made by someone other than the declarant offered to prove the truth of the matter asserted. See *People v. Caffey*, 205 Ill. 2d 52, 88 (2001). Chicago police sergeant Carlos R. Ferrer, a supervisor, testified that while executing the search warrant, he heard a conversation between defendant and several officers. Defendant stated, "I can work a deal with you guys, I know a guy that has 80 pounds of weed as long as you get rid of what's in the box." Sergeant Ferrer testified "the box" was a reference to the black lockbox containing the sexual abuse evidence. Defendant now argues Sergeant Ferrer was not present for the entire conversation but rather heard only a snippet without testifying to its context. As such, it was unreliable hearsay that did not clearly relate to the charged offenses. Defendant argues this alleged error was compounded by the court's jury instruction.

¶ 65    As defendant acknowledges, defense counsel objected at trial to the claimed hearsay statement only on foundational grounds and did not raise the issue in his posttrial motion, thus forfeiting the matter. See *People v. Hayes*, 319 Ill. App. 3d 810, 818-19 (2001) (noting preservation requires both a contemporaneous objection on the *specified* grounds and also a posttrial objection). Defense counsel, however, did object to the court's issuance of the Illinois Pattern Jury Instructions, Criminal, Nos. 3.06-3.07 (4th ed. 2000) (hereinafter, IPI Criminal 4th) relating to defendant's statement. Counsel argued the statement was "vague" and "may have been relating to the alleged marijuana sales and not, certainly not to anything else." The trial court rejected this argument, concluding the statement betrayed a consciousness of guilt. The IPI Criminal 4th Nos. 3.06-3.07, which was submitted to the jury, stated evidence had been presented that defendant made statements relating to the charged offenses and further, "It is for you to determine whether the defendant made the statements, and, if so, what weight" to give the statements. It called for the jury to consider all the circumstances under which the statement was made. Defendant included the alleged jury instruction error in his posttrial motion and contends that matter is thus preserved.

¶ 66    We think it is questionable that defendant preserved the jury instruction issue, when the basis for his objection was that defendant's statement was vague, which is a matter he had already forfeited by failing to lodge that objection before the jury. Regardless, we find no error.

¶ 67    The State responds that this statement was proper under the party admission doctrine and the jury could infer defendant's guilt from the statement because it demonstrated his

knowledge of the incriminating evidence in the box. The court's instruction was thereby properly presented to the jury. We agree.

¶ 68 The party-admission doctrine is an exception to the hearsay rule. *People v. Ramsey*, 205 Ill. 2d 287, 294 (2002). A statement by a party-opponent is not hearsay if it "is offered against a party and is *** the party's own statement." Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015); see also *People v. Aguilar*, 265 Ill. App. 3d 105, 113 (1994). Such evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. *Id.* Relevant evidence has a tendency to make the existence of a fact of consequence to the determination—here, the guilt or innocence of the defendant—more or less probable than without the evidence. *Id.* In other words, an admission is a statement from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow. *People v. Rodriguez*, 291 Ill. App. 3d 55, 61 (1997) (*Jose Rodriguez*). Moreover, the function of jury instructions is to convey to the jurors the law that applies to the facts so they can reach a correct conclusion. *People v. Sargent*, 239 Ill. 2d 166, 191 (2010). Evidentiary matters and jury instructions are within the discretion of the trial court. *People v. Rodriguez*, 387 Ill. App. 3d 812, 821 (2008); *People v. Wilson*, 331 Ill. App. 3d 434, 438 (2002).

¶ 69 In this case, there was only one black, fireproof lockbox at issue, and it was the one with evidence of defendant's sex offenses. Defendant did not present any evidence to the contrary through testimony or cross-examination. Moreover, Sergeant Ferrer testified that prior to overhearing defendant's statement, police had discovered the lockbox containing the sex offense evidence, they had obtained consent to search the box from Virginia, and they had confronted defendant with evidence of the memory card—all of this was *before* defendant made his statement. This provided adequate context to show defendant was attempting to hide the incriminating evidence in the box. The jury was entitled to make this inference of guilt taking all the facts together. Neither the admission of the statement nor the jury instruction was improper.

¶ 70 Even assuming it was improper, defendant's contention still fails in light of the overwhelming evidence of his guilt based on K.M. and D.M.'s testimony and the video evidence. His incriminating statement, and the resultant instruction, was not a material factor in his conviction. See *Jose Rodriguez*, 291 Ill. App. 3d at 61. Nor was it an error of such magnitude that it rose to the level of plain error.

¶ 71                                                    Other-Crimes Evidence

¶ 72 Defendant next contends the trial court improperly allowed the State to introduce other-crimes evidence relating to the sexual abuse of D.M., K.M.'s younger sister. See 725 ILCS 5/115-7.3 (West 2008). He urges us to review the forfeited matter for plain error affecting the fairness of his trial. See *People v. Norwood*, 362 Ill. App. 3d 1121, 1129 (2005); *People v. Jackson*, 399 Ill. App. 3d 314, 320-21 (2010). Section 115-7.3 of the Code of Criminal Procedure of 1963 permits the State, in sex offense prosecutions, to introduce evidence of other sex offenses by defendant. See 725 ILCS 5/115-7.3 (West 2008). Defendant does not necessarily challenge the propriety of admitting D.M.'s testimony as propensity evidence under the statute. Rather, he argues the prejudicial effect of this evidence substantially outweighed its probative value because both K.M. and Virginia testified to D.M.'s abuse, thereby bolstering D.M.'s credibility. See *People v. Donoho*, 204 Ill. 2d 159,

182-83 (2003) (noting the factors that must be weighed). Defendant asserts the State conducted a "mini-trial" against him relating to D.M., thereby denying him a fair trial on the charges actually lodged in this case, which related only to K.M.

¶ 73 The State responds that the trial's focus remained on K.M., and we agree. A mini-trial can be avoided by carefully limiting the details of the other crime to what is necessary to illuminate the issue for which the other crime was introduced. *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006). We agree with the State that the other-crimes evidence in this case was sufficiently tailored to fulfill its purpose. See *id.*; *People v. Perez*, 2012 IL App (2d) 100865, ¶ 54.

¶ 74 D.M.'s testimony and cross-examination covered only 26 pages of the record. Like her sister, D.M., was also a minor female whom defendant lured to his bed, where he committed sex crimes against her. As with K.M., defendant took off D.M.'s clothing, digitally penetrated her, and more than several times also performed oral sex on her. The similarities made the probative value of this evidence strong. When D.M. testified, the court issued a limiting instruction to the jury stating this evidence was not in the indictment but was limited to show defendant's motive, state of mind, and propensity to commit sexual abuse. The judge then instructed the jury that it was for them to determine whether D.M. was involved in that conduct and the weight of the evidence. See *People v. Bedoya*, 325 Ill. App. 3d 926, 938 (2001) (other-crimes evidence admissible when jury can reasonably find by a preponderance of the evidence that the defendant committed the other offense). The judge essentially repeated this instruction at the close of the case. The State appropriately focused on K.M. in opening and closing arguments. In closing, the State argued D.M.'s testimony was only to prove propensity. In rebuttal, the State reiterated to the jury, "You are not here to decide the defendant's guilt or innocence regarding [D.M.] You are here to decide the defendant's guilt or innocence regarding [K.M.] and only [K.M.] However, the law is very clear that if you believe [K.M.], then you can believe [D.M.] If you believe [D.M.], you can believe [K.M.] The law is very clear that if he did it to one person, it's more likely than not that he did it to the other."

¶ 75 Contrary to defendant's argument, testimony by the children's mother that she was unaware about the sexual abuse against both her children until defendant was arrested was not unduly prejudicial. Nor was testimony by K.M. that she was only truthful about defendant's sexual abuse against her when K.M. discovered he "was raping" her sister. First, this limited testimony by K.M. and Virginia merely touched on the believability of D.M., which the jury was entitled to consider. See *id.* Second, the testimony was not so significant that it could have influenced the jury to decide defendant's guilt on the basis of an uncharged crime relating to D.M. See *Perez*, 2012 IL App (2d) 100865, ¶ 54. This forfeited issue does not rise to plain error because there was no prejudice. *Id.* ¶¶ 61-64; see also *Enoch*, 122 Ill. 2d at 198 (admission of other-crimes evidence waived and was not plain error).

¶ 76 Limiting Testimony and Jury Instruction

¶ 77 Defendant raises two other issues, which he contends cumulatively created error. He first argues defense counsel was improperly limited from questioning Virginia about D.M.'s meeting with the examining physician, wherein D.M. initially denied the sex abuse. Defendant contends his questions to Virginia were aimed at showing that Virginia suggested the sex abuse to D.M., thus casting doubt on D.M.'s testimony. This matter is forfeited. Regardless, having reviewed the record, there was no error since defendant sought to introduce impermissible hearsay. Even assuming any error, it could never be plain error since defendant

- 18 -

could have gone about introducing the information through other means, and it did not affect his right to a fair trial. It merits no further mention.

¶ 78     Defendant's second assertion, which is one of the few that he preserved, is that the court in error declined to instruct the jury under IPI Criminal 4th No. 3.11 on prior inconsistent statements. Defendant asserts D.M.'s initial denial of the sex abuse conflicted with her later statements and testimony of abuse. Here, D.M. testified that she did not report the sex abuse by defendant because she was scared that her mother or sister would scream at her. After defendant was arrested, D.M. went to the doctor. D.M. testified that she lied to the treating physician, denying that she had been sexually abused. Her testimony suggests she did this because she was overwhelmed. D.M. eventually revealed the abuse to her mother in a letter.

¶ 79     An instruction on a witness's credibility in light of inconsistencies is a cautionary one, and a trial court has considerable discretion in deciding whether or not to give such an instruction, particularly where the inconsistency is doubtful. *People v. Luckett*, 273 Ill. App. 3d 1023, 1035 (1995). It is not clear that IPI Criminal 4th No. 3.11 applies in a case like the present where D.M. testified on direct that her statement to the doctor was a lie, and this evidence was all substantively admitted. This scenario does not seem to fit within the parameters set out in IPI Criminal 4th No. 3.11's committee note. IPI Criminal 4th No. 3.11, Committee Note. In addition, we question the instruction's application to a seven-year-old sex abuse victim. It is well-known that sex abuse victims, especially children, do not always report the crimes right away and initially may lie about them due to fear and embarrassment. Such behavior does not necessarily qualify as an inconsistency. Regardless, the failure to include this instruction did not leave the court without adequate guidance since the jury heard D.M. herself testify about her contradictory reporting of the sex abuse. See *Luckett*, 273 Ill. App. 3d at 1035. The court also instructed the jury on IPI Criminal 4th No. 1.02: that they were to judge the believability of the witnesses and weight to give their testimony, taking into account their ability and opportunity to observe; memory; manner while testifying; interest, bias, or prejudice; and reasonableness of the testimony in light of the entire case. See *id.* There was thus no error.

¶ 80     In reaching this conclusion, we find defendant's reliance on *People v. Eggert*, 324 Ill. App. 3d 79, 81 (2001), misplaced. There, this court concluded the trial court committed reversible error in declining to submit IPI Criminal 4th No. 3.11 to the jury and determined the submission of IPI Criminal 4th No. 1.02 did not suffice. In *Eggert*, however, the inconsistent statements by the State's single police officer witness related to matters material to defendant's charged offenses and the State's case rested *solely* on that witness, who had omitted key matters from his police report. Here, the evidence was more than sufficient to convict defendant of the crimes against K.M. even absent D.M.'s propensity evidence. As such, *Eggert* is inapposite.

¶ 81                                 Presentence Custody Credit

¶ 82     Defendant's final contention, which the State concedes, is that he is entitled to have his mittimus corrected to reflect 1438 days of presentence custody credit, rather than 1428 days. See *People v. Williams*, 239 Ill. 2d 503, 505-09 (2011); 730 ILCS 5/5-4.5-100 (West 2008). Accordingly, the mittimus should be corrected.

- 19 -

¶ 83                                    CONCLUSION

¶ 84          Based on the foregoing, we affirm the judgment of the trial court finding defendant guilty
of the sex offenses against K.M.

¶ 85          Affirmed; mittimus corrected.