NOTICE

Decision filed 11/10/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170323-U

NO. 5-17-0323

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-CF-685 |
| | ) | |
| MONTEZ CRUMBLE, | ) | Honorable |
| | ) | Jan V. Fiss, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the circuit court did not err in denying the defendant's motion for the suppression of statements or in denying his motion for a *Franks* hearing, and where the trial evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt, and no argument to the contrary would have merit, the defendant's appointed attorney in this appeal is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 2    A jury found the defendant, Montez Crumble, guilty of possession of a controlled substance with intent to deliver, and the circuit court subsequently sentenced him to a four-year period of probation. The defendant appeals from the judgment of conviction. His appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis it has filed with this court a motion to withdraw as counsel, along with a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967). OSAD provided the

1

defendant with a copy of its *Anders* motion and brief. This court gave the defendant ample opportunity to file a written response to OSAD's motion, or a memorandum, brief, etc., explaining why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and brief, as well as the entire record on appeal, and has determined that this appeal does indeed lack merit.

¶ 3                                    BACKGROUND

¶ 4      On January 22, 2014, Joshua Hunt, a special agent with the Collinsville Police Department, who was assigned to the Illinois State Police Metropolitan Enforcement Group of Southwestern Illinois (MEGSI), appeared before a judge of the circuit court of St. Clair County and sought a warrant to search a particular house on Gaty Avenue in East St. Louis, Illinois. In his sworn complaint for search warrant, Hunt described three occasions, on three different days in January 2014, when a confidential source purchased crack cocaine from the defendant at the Gaty Avenue residence. According to Hunt, the confidential source was familiar with the defendant, and each of the three controlled buys was made as police watched from some distance. Also in the complaint, Hunt stated that he had "conducted a criminal history search" on the defendant, and he had found that (1) in two different St. Clair County felony cases commenced in 2004, the defendant was convicted of the manufacture or delivery of a controlled substance, and he was sentenced to probation and jail; (2) in December 1995, East St. Louis police arrested the defendant for possession of cannabis; (3) in two different St. Clair County felony cases commenced in 1995, the defendant was convicted of two counts of delivering 10 to 30 grams of cannabis, and he was sentenced to probation; and (4) in May 2005, St. Louis County (Missouri) police arrested the defendant for disturbing the peace and for manufacturing or delivering a controlled substance. Based on Hunt's sworn complaint, the judge issued a search warrant for the Gaty Avenue

2

residence. Two days after the search warrant was sought and issued, police officers executed the warrant.

¶ 5        In May 2014, the defendant was charged with possession of 1 gram or more but less than 15 grams of a substance containing cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 2014)) plus a firearm offense. Eventually, the two counts were severed, and the State proceeded on the cocaine charge, which is the subject of the instant appeal. (The firearm charge is the subject of an appeal in *People v. Crumble*, No. 5-18-0014, but the firearm charge will not be mentioned again in this order.)

¶ 6        In August 2015, the defendant filed, by his public defender, a motion to suppress statements that he had made during a videotaped police interrogation. The motion alleged that the police provided the defendant with *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) in a hasty and incomplete manner, that the defendant was under the influence of drugs or alcohol at the time of the interrogation, and that the defendant's statements were the product of "psychological coercion" and improper inducement.

¶ 7        The court scheduled a hearing on the defendant's suppression motion for August 17, 2015. Apparently, the suppression hearing was held. However, the record on appeal does not include a transcript of the hearing. On August 26, 2015, the circuit court entered a written order denying the suppression motion. The court found that the defendant "was not grossly intoxicated" at the time of the police interrogation, and that he therefore "retained the capacity" to waive his rights. The court further found that the State had met its burden of showing that the defendant's waiver of *Miranda* rights was "knowing, intelligent, and voluntary."

¶ 8        The record on appeal lacks a transcript of the suppression hearing, but it does include a DVD of the police interrogation that was the subject of the suppression motion. The interrogation

3

took place in a police vehicle, apparently upon completion of the search of the Gaty Avenue residence. Throughout the interrogation, the camera was squarely on the defendant; no one else was visible on the video. At the start, the principal interrogator, the aforementioned Joshua Hunt of the Collinsville Police Department and MEGSI, informed the defendant of his *Miranda* rights, albeit quickly, and the defendant indicated his understanding of those rights, both orally and by initialing and signing a waiver form. The defendant certainly did not appear to be under the influence of alcohol or drugs during the interrogation, though he became somewhat emotional at times. He was coherent and responsive to questions, though he sometimes seemed evasive or nervous. No police coercion, intimidation, or improper inducement was apparent. The defendant told police that he had made "a stupid choice *** to bring drugs into [his home]" and that he had sold crack cocaine "off and on" for a year, in response to financial straits. He admitted that the bedroom in which police had found the crack was his bedroom, and he admitted that the crack was his. He said that he had bought the crack, along with some powder cocaine, the previous day for $600.

¶ 9    In August 2016, the defendant filed a "motion for a *Franks* hearing in order to quash the search warrant and suppress evidence illegally seized," *i.e.*, a motion for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In his motion for a *Franks* evidentiary hearing, the defendant alleged that false statements had been included in the January 2014 search-warrant complaint, whether knowingly or with reckless disregard for the truth, and he further alleged that without those false statements, probable cause for the search of the Gaty Avenue residence could not be established. More specifically, the defendant alleged that the search-warrant complaint (1) inflated the defendant's criminal history and (2) described the facts and circumstances of the three alleged undercover drug purchases in a manner that was wholly

4

inconsistent with the content of a surveillance video that the State had provided to the defense. According to the defendant's *Franks* motion, the St. Clair County probation department in May 2014 prepared a criminal history of the defendant, and the history showed only one entry for the defendant—a conviction for delivery of a controlled substance in a St. Clair County felony case commenced in 2004. In addition, the defendant stated that the two 1995 St. Clair County felony cases mentioned in the search-warrant complaint related to someone other than the defendant, who had falsely given the defendant's name at the time of arrest. In short, the defendant alleged in his *Franks* motion that of all the criminal-history items mentioned in the search-warrant complaint, only one of those items truly related to the defendant.

¶ 10    The State filed a response to the defendant's *Franks* motion, asking the court to deny the motion. The State stated, *inter alia*, that any incorrect criminal-history information included in the complaint was not included intentionally, knowingly, or with a reckless disregard for the truth, and that probable cause for the search existed even if all the incorrect information were set aside. In regard to the alleged discrepancy between the search-warrant complaint's description of three controlled buys versus the contents of a surveillance video, the State stated that the three controlled buys were separate and apart from the activity captured in the surveillance video.

¶ 11    In August 2016, the court held a hearing on the defendant's motion for a *Franks* evidentiary hearing. Both sides presented arguments. The defendant's attorney noted that the *Franks* motion addressed "two problems with the search warrant." According to counsel, the more serious of the two problems was that the search-warrant complaint inflated the defendant's criminal history. Specifically, the search-warrant complaint listed only one conviction that actually related to the defendant; none of the other listed convictions or arrests actually related to the defendant, and one of those convictions actually related to the defendant's cousin, who sometimes used the

5

defendant's name as an alias. The second problem described in the *Franks* motion, counsel noted, was that "the [search-warrant complaint's] description of the three controlled buys" was inconsistent with the content of a surveillance video that the State had provided to the defense. During his argument to the court, counsel requested leave to add to the motion a third reason for holding a *Franks* evidentiary hearing—the need to determine whether it was the defendant or the defendant's cousin who sold drugs to the confidential source during the three controlled buys described in the search-warrant complaint.

¶ 12    The State, for its part, argued that the defendant had alleged merely that the search-warrant complaint included "errors and mistakes," and that the defendant thus failed to make a substantial preliminary showing that a false statement was included in the complaint intentionally, knowingly, or with reckless disregard for the truth. The State presented the court with a certified copy of the record in St. Clair County case No. 95-CF-61, People v. Cortez Brown, a/k/a Montez Crumble, and stated that the police officer who prepared the search-warrant complaint could easily and innocently have concluded from the court record that the conviction in that case belonged to the defendant. The State added that even if the inaccurate criminal-history information were excluded from the search-warrant complaint, the complaint would nevertheless contain enough information to establish probable cause for the search warrant. As for the alleged discrepancy between the search-warrant complaint's description of the three controlled buys versus the content of a surveillance videotape that had been turned over to the defense, the State stated that the search-warrant complaint did not contain any mention of, or reference to, surveillance recordings, and that "[t]he search warrant that was issued by this court was not based on that video. It wasn't based on the events depicted in that video." The State asked the court to deny the motion for a *Franks* hearing, because "[t]he search warrant *** was based on three controlled buys from a

6

reliable source" and those buys were corroborated by police officers' observations. At the end of the hearing, the court granted the defendant time to file an amended motion for a *Franks* evidentiary hearing, and it granted the State time to respond thereto.

¶ 13    The day after the hearing, the defendant filed an amended motion for a *Franks* hearing. The amended *Franks* motion was the same as the original *Franks* motion except that it included a paragraph alleging that the defendant had a cousin named Cortez Brown, who resembled the defendant, had an extensive criminal record, and frequented the area surrounding the defendant's Gaty Avenue residence, and further alleged that the police or the confidential source could have mistaken Cortez Brown for the defendant, rendering unreliable the identification of the defendant as the drug seller.

¶ 14    The State did not file a response to the amended *Franks* motion. It rested on its response to the original *Franks* motion and the arguments that it presented at the August 2016 hearing thereon.

¶ 15    On October 5, 2016, the circuit court entered a written order denying the amended motion for a *Franks* hearing. The court found that the defendant had failed to make a preliminary showing that the police officer intentionally, knowingly, or with reckless disregard for the truth included false statements in his search-warrant complaint, and that the defendant therefore was not entitled to a *Franks* hearing.

¶ 16    In April 2017, the cause proceeded to trial by jury. Joshua Hunt, the Collinsville police officer, testified that on January 22, 2014, while he was assigned to MEGSI, he obtained a warrant permitting police to search a particular house on Gaty Avenue in East St. Louis for controlled substances and any items indicative of the sale or distribution thereof. On January 24, 2014, Hunt and other police officers executed the search warrant. Upon their arrival at the house, they detained

7

a man who was standing near a car that was idling in front of the house; this man was later identified as the defendant. Then, officers entered the house and began their search. In the southeast bedroom, on a nightstand, they found two small plastic baggies; one of the baggies contained suspected crack cocaine (State's exhibit #10), and the other contained suspected powder cocaine (State's exhibit #11). A small digital scale was found on that same nightstand. Also in the bedroom, inside a dresser, police found $1872 in cash. The search did not yield any paraphernalia typically possessed by a drug user, such as syringes or a crack pipe.

¶ 17 After the search, Hunt informed the defendant of his *Miranda* rights, which the defendant appeared to understand. According to Hunt, he did not threaten or coerce the defendant or promise him anything. Hunt proceeded to question the defendant, as the two sat in a police vehicle parked near the residence that had been searched. The defendant, Hunt thought, seemed comfortable while speaking with him. A DVD recording of the interrogation was played for the jury. This court has described the interrogation *supra*.

¶ 18 Marla Spangler, a forensic scientist with the Illinois State Police crime lab in Belleville, who specialized in drug chemistry, testified that she weighed the suspected crack cocaine (State's exhibit #10) and analyzed it with a gas chromatograph mass spectrometer. The "off-white chunky substance" weighed 5.9 grams, and her analysis led her to conclude, to a reasonable degree of scientific certainty, that it contained cocaine. Spangler also weighed the suspected powder cocaine (State's exhibit #11); the substance plus the baggie that it was in weighed 7.7 grams. Spangler did not perform chemical testing on the suspected powder cocaine.

¶ 19 Joseph Beliveau, a master sergeant with the Illinois State Police, testified that in January 2014, he was the director of MEGSI. He also was the officer in charge of the search of the Gaty Avenue residence on January 24, 2014. Beliveau observed that the baggie of suspected crack

8

cocaine (State's exhibit #10), found in a bedroom of the residence, contained 60 or more "one-tenth and two-tenth pieces." Based on his years of experience with narcotics investigations, including his many arrests of narcotics users and dealers, Beliveau testified that users of crack cocaine—as opposed to dealers in crack cocaine—"very rarely" possess more than two or three "one-tenth or two-tenth pieces" of crack cocaine at any one time, for reasons that included crack users' tendency to smoke their crack within a short time after procuring it. The digital scale found during the search appeared to have a "residue" indicating that it had been used to weigh cocaine.

¶ 20    At the close of the State's case, the defendant moved for a directed verdict, arguing that the State had failed to prove an intent to deliver. The court denied the motion. After an appropriate admonishment and questioning by the court, the defendant chose not to testify. The defense rested without presenting evidence. The jury, after deliberations, found the defendant guilty of unlawful possession of a controlled substance with intent to deliver, as charged.

¶ 21    The defendant filed a posttrial motion. He alleged, *inter alia*, that the State had failed to prove guilt beyond a reasonable doubt, and that the circuit court had erred in denying the defendant's motion to suppress statements and his motion for a *Franks* hearing.

¶ 22    In July 2017, the court held a hearing on the defendant's posttrial motion. After hearing the arguments of counsel, the court denied the motion. Proceeding to sentencing, the court sentenced the defendant to probation for a period of four years. In August, the defendant filed through counsel a timely notice of appeal from the judgment of conviction, thus perfecting the instant appeal.

¶ 23                                        ANALYSIS

¶ 24    In its *Anders* brief, OSAD raises three potential issues in this appeal, *viz.*: whether the circuit court erred in denying the defendant's motion to suppress statements, whether the circuit

9

court erred in denying the defendant's motion for a *Franks* evidentiary hearing, and whether the State proved beyond a reasonable doubt that the defendant was guilty of the drug offense for which he stood trial.

¶ 25    In its *Anders* brief, OSAD suggests that the circuit court's denial of the defendant's motion to suppress statements was not against the manifest weight of the evidence (see *People v. Glass*, 232 Ill. App. 3d 136, 150 (1992)), and any argument to the contrary would lack merit. This court agrees with OSAD's suggestion. In his motion to suppress statements, the defendant alleged that the police provided the defendant with *Miranda* warnings in a hasty and incomplete manner, that the defendant was under the influence of drugs or alcohol at the time the police interrogated him, and that the defendant's statements were the product of "psychological coercion" and improper inducement. The videotaped interrogation, which this court has described in some detail *supra*, does not support any of the allegations contained in the suppression motion. Indeed, the videotaped interrogation refutes those allegations. This court does not have any way of knowing what other evidence, if any, was presented at the suppression hearing, because the record on appeal does not include a transcript of that hearing. This court presumes that the circuit court's decision was aligned with whatever evidence was admitted at the hearing. See, *e.g.*, *People v. Lopez*, 229 Ill. 2d 322, 344 (2008).

¶ 26    OSAD also suggests that the defendant cannot make any meritorious argument that the circuit court erred in denying his motion for a *Franks* evidentiary hearing. See *Franks v. Delaware*, 438 U.S. 154 (1978). This court agrees. *Franks* gives a criminal defendant a right, under limited circumstances, to a hearing where he may challenge the veracity of an affidavit supporting a search-warrant complaint. *People v. Voss*, 2014 IL App (1st) 122014, ¶ 16. The purpose of a *Franks* hearing is to provide some protection against perjurious warrant applications.

*People v. Lucente*, 116 Ill. 2d 133, 150 (1987). The affidavit supporting a search warrant is presumed valid, but if a defendant makes a substantial preliminary showing that a false statement—and, moreover, a false statement necessary for the finding of probable cause—was included in the affidavit intentionally, knowingly, or with reckless disregard for the truth, the defendant will be granted an evidentiary hearing. *Franks*, 438 U.S. at 171. Appellate review of a ruling on a motion for a *Franks* evidentiary hearing is *de novo*. *People v. Chambers*, 2016 IL 117911, ¶ 79. (In its *Anders* brief, OSAD did not suggest a standard of review for this issue.)

¶ 27    In his *Franks* motion, as detailed *supra*, the defendant alleged that the sworn search-warrant complaint included an inflated criminal history for the defendant, attributing to the defendant various convictions and arrests that did not actually pertain to him. As the State conceded in the circuit court, the search-warrant complaint did in fact include inaccurate information about the defendant's criminal history. However, some of the inaccurate information appears to have resulted from an understandable confusion between the defendant's criminal history and the criminal history of the defendant' cousin, Cortez Brown, who appears to have used the defendant's name as an alias. The defendant did not proffer any actual evidence that the inaccurate criminal-history information was included intentionally, or knowingly, or with a reckless disregard for the truth. Furthermore, even if all of the inaccurate criminal-history information in the search-warrant complaint were set aside and disregarded, there was enough information in the complaint to establish probable cause for the search of the Gaty Avenue residence. The complaint detailed three then-recent controlled buys of crack cocaine at the residence, each involving a confidential source who was familiar with the defendant and who was under police surveillance. The defendant did not make any specific allegation of deliberate falsehood or of reckless disregard for the truth in relation to the accounts of those controlled buys.

11

In short, the defendant failed to make the type of showing that would entitle him to a *Franks* evidentiary hearing.

¶ 28 Finally, OSAD suggests that there would be no merit to an argument that the State failed to prove the defendant guilty beyond a reasonable doubt. This court agrees with OSAD's assessment. The defendant stood trial for possession of 1 to 15 grams of a substance containing cocaine with intent to deliver. During the search of the defendant's residence, the police found, in the defendant's bedroom, a baggie containing approximately 60 "pieces" of crack cocaine, weighing 5.9 grams, along with a digital scale and $1872 in cash. The amount of crack was unusually large for a mere user. The scale and the substantial sum of cash also evidence engagement in drug sales. During police interrogation, the defendant admitted to purchasing the baggie of crack cocaine, plus some amount of powder cocaine, the previous day, and he admitted to selling crack "off and on" for a year. This evidence was sufficient to permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, and therefore any challenge to the sufficiency of the evidence would fail. See *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

¶ 29                                      CONCLUSION

¶ 30 None of the three potential issues discussed by OSAD in its *Anders* brief has any merit. Furthermore, this court has not found any significant error in the entire record on appeal. Accordingly, OSAD is granted leave to withdraw as the defendant's counsel on appeal, and the judgment of conviction is affirmed.

¶ 31 Motion granted; judgment affirmed.